(117 So. 472)

WALKER v. WALKER. (6 Div. 110.)

Supreme Court of Alabama. June 14, 1928.

Goodwyn & Ross, of Bessemer, for appellant.

Mathews & Mathews, of Bessemer, for appellee.

SAYRE, J. Appellee, on his bill for that purpose, had a decree annulling the marriage between himself and appellant on the ground that, at the time of that marriage, appellant had a husband, living and undivorced. Appellee and her first husband were married in September, 1912. They lived together about four months, after which the first husband, Jackson, disappeared—left for parts unknown. Three years later, in September, 1915, the parties to this cause contracted a ceremonial marriage, and thereafter, for more than 10 years. lived together as man and wife. In January, 1922, a child was born to them. In 1926 their troubles began. She accused him of being too intimate with another woman; he charged that she was entirely too familiar with another man; and then, in March, 1927, the bill in this cause was filed.

The facts heretofore stated, along with one or two others doubtfully evidenced and of small consequence, present a case of confused and conflicting presumptions. If Jackson was alive at the time of the ceremonial marriage between the parties to this cause, the inexorable policy of the law will not permit it to be considered as anything but adulterous and unlawful. McLaughlin v. McLaughlin, 201 Ala. 482, 78 So. 388. On the other hand, a marriage, in fact, having been shown, the law presumes that it is valid, and casts the burden on him who questions it to establish its invalidity—this because the law presumes morality, not immorality; marriage, not concubinage; legitimacy, not bastardy. Pittinger v. Pittinger, 28 Colo. 308, 64 P. 195, 89 Am. St. Rep. 198, editorial note. There is also the presumption that the life of a person continues for 7 years after he is last heard from, and that his death will be presumed after the lapse of that time. Id. And, according to many authorities, in a case like this, the courts presume in favor of the established status that the former marriage has been dissolved by a decree of divorce. Id. These presumptions, or most of them, are stated in Fuquay v. State (Ala. Sup.) 114 So. 898[1]; but that case involved the criminal law. And if a woman contracts a second marriage in the belief, however ignorantly entertained, that she may do so, but when, in fact, her first spouse is alive, and the parties to the second marriage, intending matrimony, not concubinage, live together as man and wife until the lapse of 7 years after the first husband is last heard from, an actual marriage is thereby established. Klipfel's Estate v. Klipfel, 41 Colo. 40, 92 P. 26, 124 Am. St. Rep. 96, editorial note. For, in this, as in many other states, the common-law marriage has long been recognized. Wall v. Williams, 11 Ala. 826; Tartt v. Negus, 127 Ala. 308, 28 So. 713; Herd v. Herd, 194 Ala. 613, 69 So. 885, L. R. A. 1916B, 1243; and the other cases cited in Fuquay v. State, supra.

None of the presumptions referred to is conclusive. They are based upon experience and public policy and established to facilitate the ascertainment of truth in the trial of causes. Turner v. Williams, 202 Mass. 500,

89 N. E. 110, 24 L. R. A. (N. S.) 1199, 132 Am. St. Rep. 511. The case then is to be decided upon the evidence and the truth determined according to common sense aided to what extent it may be by the presumptions involved. Turner v Williams, supra.

The parties to this cause had lived together as man and wife for more than 10 years before the present difference arose between them. At that time Jackson, appellant's first husband, had been absent for more than 13 years. In the meantime a child was born, and appellee had acquired a home, to which the labor of appellant materially contributed. Appellee, testifying in 1927, about 15 years after the disappearance of Jackson, says that a man named Bailey told him, about 2 years before, that he had seen Jackson in Bessemer. A goodly number of witnesses living in the same neighborhood, friends and acquaintances of the parties, were examined. If any of them had seen Jackson, they were not asked to state the fact. We attach little importance to appellee's statement as to what Bailey said. Appellant testifies that she had last heard of Jackson about 14 years previously, when she heard that he had died, and, further, that she told appellee before her marriage with him that she had married Jackson, and that she had heard that he had died "somewhere in New Orleans." This she must have repeated to appellee, for he was at pains to get a certificate from the board of health of New Orleans, Vital Statistics Department, of date October 22, 1927, to the effect that there was no record of the death of Jackson in New Orleans during the last 15 years. But this certificate lacks much of proving that Jackson was alive at some other place, or even in New Orleans. Upon the whole case, then, our judgment is that the court should not have undertaken to annul by its decree the marriage between the parties of date 12 years before.

The decree under review will be reversed, with direction that appellee's bill be dismissed.

Reversed and rendered.

ANDERSON, C. J., and GARDNER, and BOULDIN, JJ., concur.

