55 So.2d 849

**HUNTER et al. v. LYNN et al.**

**4 Div. 654.**

Supreme Court of Alabama.

Nov. 1, 1951.

Rehearing Denied Jan. 10, 1952.

Chauncey Sparks, Eufaula, for appellant Hunter.

Archie I. Grubb, Eufaula, for appellees..

Clayton & LeMaistre, Eufaula, for appellants Nolin.

BROWN, Justice.

The appellees William Lynn, Rachel Lynn Nelson, Gertrude Lynn Jones, Ruth Lynn Edmond and Lena Bell Hopkins filed the original bill on the 3rd of June, 1948, alleging that they are the only heirs at law of Sam Lynn who died intestate on November 1, 1937, in Barbour County, Alabama; that they are the joint owners or tenants in common of three separate and distinct parcels of land located in Eufaula, Alabama, described in the bill as follows:

"A house and lot known as 140 Van Buren Street, Eufaula, Alabama, bounded on the North by Blakley, East by Street, South by Dennis, and West by Dean.

"And also, a house and lot on West side of Van Buren Street known as 326 Van Buren Street, Eufaula, Alabama, and bounded on the North by White, East by Street, South by Williams and West by Hages.

"And also, a house and lot on Randolph Street in the City of Eufaula, Barbour County, Alabama, known as West Half (W–1/2) of South Half (S–1/2) of property conveyed to Sam Lynn by deed from Katie Mae Johnson dated February 11, 1914, and recorded in the office of the Judge of Probate of Barbour County, Alabama, in Deed Book 'M', page 163."

The appellees further allege that each has a 1/5 interest in the above described property which cannot be equitably divided among them without a sale thereof. They made Hattie Hunter, James E. Nolin and Elizabeth E. Nolin defendants to said bill, alleging that the Nolins are in possession of the piece of property third above described and are repudiated to own or claim some right, title or interest therein and that no suit is pending to enforce or test the validity of said title.

The said Nolins are claiming title through Hattie Hunter. The bill further alleges that said Hattie Hunter and said decedent prior to his death lived together in a state of adultery and said Hattie Hunter at the time she claims to have married said Sam Lynn had a living husband.

All of the respondents answered and made their answers cross-bills, which challenge the right of complainants to inherit the property sought to be sold for division, denying that they are the heirs at law of Sam Lynn, deceased.

The cause was submitted for final decree on the bill of complaint as last amended, the answers and cross-bills, the answers of complainants thereto and testimony taken in open court, together with documentary evidence. The court entered a decree granting complainants relief, ordering the property sold for division and distribution among the complainants, denying relief to the defendants on their cross-bills and entering a decree against Hattie Hunter in favor of the Nolins for breach of the covenants of the warranty deed made by Hattie Hunter to them. The respondents appealed and assign the rendition of said decree as error. The defendants Nolin join in the assignment of error insofar as it touches the question of Hattie Hunter's right and title to the property.

There is no administration on the estate of Sam Lynn, deceased. No claim of homestead or dower rights were asserted by Hattie Hunter in said property.

Hattie Hunter neither alleges nor shows color of title. She alleges that she entered into possession in her own right, claiming all of said property immediately after the death of Sam Lynn in 1937 and that she has continued in the open, notorious, adverse possession thereof since that time, paying the taxes thereon and making improvements.

The evidence shows that Hattie Hunter married Sam Lynn in Eufaula, Alabama, on February 6, 1909, that at that time she was Hattie Baldwin and her husband was still living. A proceeding for divorce was pending and a decree divorcing the Baldwins was rendered by Chancellor Gardner on February 13th, 1909, suspending its operation for sixty days from its date. Subsequent to that date no ceremonial marriage was entered into between Sam Lynn and Hattie Hunter, but they continued to live together as husband and wife for 28 years and up until the death of Sam Lynn in 1937. Through her solicitor, Judge Sparks, at the opening of the trial, she disavowed that she claimed possession as the widow of Sam Lynn.

Complainants, on the other hand, insist that she took the possession of said land, claiming as the widow of Sam Lynn and offered evidence going to show that she agreed to hold for her life. Hattie Hunter testified that no such agreement was made.

In the final decree as first entered the circuit court declared that the marriage of Hattie Hunter and Sam Lynn was void. On a subsequent date, on the motion of the complainants, the part of the decree which declared such marriage void was stricken from the decree.

The evidence is without dispute that Lena Bell Hopkins is the daughter of Ella Stephens, born as a bastard, but after her birth Sam Lynn was charged in a bastardy proceeding before a Justice of the Peace at Eufaula, Alabama, in Barbour County, as being the reputed father of said child and Lynn entered into a ceremonial marriage with Mary Ella Stephens and subsequently recognized said Lena Bell as his daughter, placed her in the home of his mother and treated her as his daughter through the years up until the time of his death. The ceremonial marriage between Sam Lynn and Mary Ella Stephens occurred on the 9th of October, 1899. This appears from the record evidence in the form of an authenticated marriage license, the return of same to the Judge of Probate made on the same date by C. P. S. Daniels, N. P. and "Ex. Off. J. P.", and recorded in Marriage Record No. 14, at page 114, by the Probate Judge of said county. It is suggested in the evidence, based on hearsay testimony, that Lynn was forced into said marriage and that he did not thereafter live with the mother Mary Ella Stephens. There is no evidence, however, that Lynn took any steps to annul said marriage. There is abundant evidence that said Lynn recognized and treated the child as his daughter, as above stated. Said marriage and recognition legitimatized Lena Bell Hopkins as his daughter and the heir at law of said Sam Lynn. Code 1940, Tit. 27, § 10.

The evidence is further without dispute that Sam Lynn and Fannie Watson began to live together in 1900 and the first child, the complainant Ruth Lynn Edmond, was born April 11, 1901.

It is stated in brief of appellee and this statement is supported by the testimony in the case, that Mary Ella Stephens died about March 24, 1901. The evidence shows without dispute that Sam Lynn lived all of his life in Barbour County, Alabama, and there is no evidence that he was divorced from Mary Ella Hopkins, as appears by a search of the records of Barbour County. Therefore the conclusion is inescapable that at the time Sam Lynn and Fannie Watson assumed their relationship, Sam Lynn was without legal capacity to contract marriage and that his marriage and intercourse with said Fannie Watson was in violation of the following express provision of the statute, § 47, Title 14, Code of 1940: "If any person, having a former wife or husband living, marries another, or continues to cohabit with such second husband or wife in this state, he or she shall, on conviction, be imprisoned in the penitentiary for not less than two nor more than five years."

In the case of Brand v. State, 242 Ala. 15, 6 So.2d 446, 448, the court referred to the case of Osoinach v. Watkins, 235 Ala. 564, 180 So. 577, 117 A.L.R. 179, wherein it was observed: "'We conclude that the marriage of Dr. Watkins to Mrs. Viola Watkins, though consummated in the State of Georgia, and legal in that state, was prohibited by positive statutes of this state, sections 8991 and 4522, Code of 1923 [Code 1940, Tit. 34, § 1; Tit. 14, § 325]; that their subsequent cohabitation in this state was unlawful, and subjected them to indictment, and conviction of a felony, punishable by imprisonment in the penitentiary of this state for a period from one to seven years. We are also of the opinion and so conclude that said sections 8991 and 4522 express unmistakably the decided state policy not to sanction or give effect to a marriage between persons within the degree of relationship declared therein to be incestuous and void, no matter where such marriage may have been contracted. Such a marriage must be pronounced void ab initio.'"

The expressed doctrine was applied in the Brand case, supra, as applicable. The evidence is further without dispute that after the birth of the other complainants, Fannie Watson and Sam Lynn separated. Fannie moved to Columbus, Ga., married a man by the name of Williams and lived with him until her death in 1933, and at her death she was known by the name of Williams.

As before stated, after the separation of Sam Lynn and Fannie Watson, Lynn without obtaining a divorce from her mar-

ried Hattie Hunter in 1909 and lived with her for about 28 years until his death.

In the case of Gilbreath v. Lewis, 242 Ala. 510, 513, 7 So.2d 485, 487, this court approved the statement quoted from the case of White v. Hill, 176 Ala. 480, 58 So. 444, the definition of a common law marriage:

" 'To constitute a marriage good and valid at common law—that is, in the absence of a statute otherwise specifically providing—it is not necessary that it should be solemnized in any particular form or with any particular rite or ceremony. All that is required is that there should be an actual and mutual agreement to enter into a matrimonial relation, permanent and exclusive of all others, between parties capable in law of making such a contract, consummated by their cohabitation as man and wife or their mutual assumption openly of marital duties and obligations.'

" 'If intercourse between persons of opposite sex was illicit in its inception because of their failure to enter into a marriage by ceremony or by agreement, it is presumed to continue so, and the burden of proving a subsequent intermarriage rests on the party asserting it.' 38 C.J. 1328. To like effect is 35 Amer.Jur. 334.

"We recognize this principle in Prince v. Edwards, 175 Ala. 532, 57 So. 714, where the Court said: 'The general principle is thus stated: "While all reasonable presumptions are in favor of marriage, yet they are overcome by proof that the relations were in their origin illicit and unlawful. The illicit relation is presumed to continue until there is proof that the parties were married. This presumption, whether of fact or of law, may be overcome by satisfactory proof of cohabitation, acknowledgment, and reputation." '

"Of course a valid common law marriage must rest upon mutual consent of the parties, a mutual agreement to be husband and wife, followed by cohabitation and living together as husband and wife. Tartt v. Negus, 127 Ala. 301, 28 So. 713; Moore v. Heineke, 119 Ala. 627, 24 So. 374."

In Turner v. Turner, 251 Ala. 295, 297, 37 So.2d 186, 188, the court observed:

"We stress that to constitute such marriage there must first have been a *present agreement* between a man and a woman, eligible to enter such relationship, to take each other as man and wife; and then this must be followed by cohabitation or the mutual assumption openly of marital duties and obligations. Keezer, Marriage and Divorce, 3rd Ed., Morland, p. 34, § 20; In re Price's Estate, 129 Fla. 467, 176 So. 492; authorities, supra.

"As the above-cited Florida case pertinently observes:

" 'Neither cohabitation and repute nor circumstances, whose sole function is to show mutual consent of the parties, establishes a common-law marriage of itself. *There must be words of present assent per verba de praesenti.*' 176 So. 493. (Emphasis supplied.)

"We have above italicized to indicate those essential elements which are not supplied in the facts before us to establish a marriage at common law. * * *"

The above statement of the law has been approved also in the case recently decided of Whitworth v. Whitworth, ante, p. 296, 54 So.2d 575.

In Prince v. Edwards, 175 Ala. 532, 537, 538, 57 So. 714, 715, we quoted with approval the following statement of the law as declared by the Supreme Court of Minnesota, State v. Worthingham, 23 Minn. 528, as follows:

" 'An intercourse originally unlawful and lustful from choice undoubtedly raises the presumption that its character remains such during its continuance. But this is a presumption, not of law, but of fact, for the consideration of the jury in connection with the particular facts and circumstances of the case. In the case at bar, it appears that the cohabitation between the parties had its origin, in part at least, in a desire for marriage, and under the promise that such a relation should be assumed as soon as defendant could procure a divorce from his then wife. This indicates that the parties regarded the married state as one preferable to that of concubinage, and weakens somewhat the force of the presumption ordinarily attaching to an original illicit co-

habitation. The weight which is to be given to it, however, in this, as in every other, case rests exclusively with the jury, in the exercise of its best judgment, under proper instructions from the court.' * * *

"It is true that courts have no right to marry people who never wished nor intended to be married, and equally true that it is not their office or policy to place a premium on the defiance of law and social custom by lifting lust to the level of honorable matrimony. But these results cannot be reasonably feared from the practical application of the principles we have declared."

The above stated principle was approved by a majority of the Justices in Smith v. Smith, 247 Ala. 213, 23 So.2d 605.

In Hill v. Lindsey, 223 Ala. 550, 552, 137 So. 395, 396, the Court observed: "The conflict in the proof relates to the question of cohabitation as man and wife following the decreetal order of March 9, 1929. Appellant insists that while they each lived on the place they remained separate, but we are persuaded the decided weight of the evidence, supported we think by reasonable deductions from undisputed facts, leads to the conclusion that the husband obtained the order for the very purpose of removing all doubt or question as to the validity of their ceremonial marriage, which both parties evidently considered entirely regular, and that they continued to live together as man and wife thereafter until the separation, details of which are here unimportant. It is the well-settled rule that if parties in good faith marry when in fact a legal impediment exists to their marriage, and they continue to cohabit as man and wife after the removal of the impediment of their lawful union, the law presumes a common-law marriage. * * *"

In Dorsey v. Dorsey, Ala.Sup., 53 So.2d 601, 603, it was observed: "Under the decisions of this court, one attacking the validity of a marriage does not meet the burden imposed on him by showing merely that the respondent was previously married. The burden is on one attacking the validity of a second marriage not only to establish the fact of the previous marriage, but that such previous marriage has not been dissolved by divorce or death. Faggard v. Filipowich, 248 Ala. 182, 27 So.2d 10, and cases cited; Jordan v. Courtney, 248 Ala. 390, 27 So.2d 783; Whitman v. Whitman, 253 Ala. 643, 46 So.2d 422.".

The court held in the last cited case that the complainant failed to meet the burden of proof that the marriage of Florrie Dorsey and Ed Dorsey had not been dissolved by divorce.

In view of the fact that the evidence is without dispute that Sam Lynn entered into a ceremonial marriage with Mary Ella Stephens, the burden was on the complainants to show that said marriage had been dissolved by decree of divorce or terminated by death of one of the parties. The testimony of the complainant Ruth Lynn Edmond shows without dispute that there *"was no divorce"* of Sam Lynn from Fannie Watson before his marriage to Hattie Hunter, that Sam and Fannie separated about 1909 and Sam soon thereafter married Hattie and Fannie married Williams. This evidence in connection with the evidence showing that the relation between Sam and Fannie in its inception was bigamous and their continued cohabitation illegal, is clearly inconsistent with and repugnant to the conclusion that there was *"an actual and mutual agreement to enter into a matrimonial relation, permanent and exclusive of all others, between parties capable in law of making such a contract."* Gilbreath v. Lewis, 242 Ala. 510, 7 So.2d 485, 487.

We are therefore of opinion and hold that the complainants have failed to meet and carry the burden of proof showing that they are joint owners and tenants in common of the property of which Sam Lynn died seized and possessed. We further hold that Lena Bell Hopkins was the only surviving heir at law of Sam Lynn and that the bill must be dismissed for failure of proof. Brown v. Feagin, 174 Ala. 438, 57 So. 20; Mizell v. Walley, 253 Ala. 302, 44 So.2d 764.

We are further of the opinion that the decree granting relief to the defendants Nolin should be vacated and set aside, leaving the parties free to test their respective

claims of title to said property in an appropriate action at law. The jurisdiction conferred on courts of equity by § 186, Title 47, Code of 1940, is statutory and the relation of joint owners is essential to the equity of the bill. Moore v. Foshee, 251 Ala. 489, 38 So.2d 10; Hall v. Hall, 250 Ala. 702, 35 So.2d 681; Roy v. Abraham, 207 Ala. 400, 92 So. 792, 25 A.L.R. 101.

Reversed and rendered.

LIVINGSTON, C. J., and FOSTER and STAKELY, JJ., concur.