80 So.2d 626

**C. G. BARNETT et al.**

v.

**Dera BARNETT et al.**

6 Div. 623.

Supreme Court of Alabama.

May 26, 1955.

Robt. A. Sapp and A. L. Sapp, Cullman, for appellants.

Marvin H. Galin, Cullman, for appellees.

GOODWYN, Justice.

Appellants, complainants below, filed a bill in equity seeking cancellation of several conveyances of lands in which their father, C. A. Barnett, deceased, had an interest, and also seeking, in event the relief should be granted, a sale of the lands for division among the father's heirs. The basic ground for relief is that the execution of the several deeds was the result of undue influence exerted over C. A. Barnett by Dera Barnett, one of the respondents, who, it is alleged, "claims to be the wife or widow" of said C. A. Barnett. The testimony was taken orally before the court, after which a final decree was rendered denying relief and dismissing the bill. This appeal is from that decree.

Complainants are C. G. Barnett and S. E. Barnett, children of C. A. Barnett by his second wife, and Annie C. Barnett and Mrs. Maude Barnett Hollingshead, children of C. A. Barnett by his first wife. Respondents are G. L. Barnett and Sydney H. Barnett, children of C. A. Barnett by his first wife; William Jack Barnett, a son of Sydney H. Barnett; Dera Barnett; Cullman Savings & Loan Association, Inc.; and Darrel R. McNeal and wife, Fay Marie McNeal.

Dera Barnett married C. A. Barnett in 1927 and lived with him continuously thereafter as his wife until his death in 1950. William Jack Barnett and the McNeals are grantees of lands purchased by them from Dera Barnett, being some of the lands here involved. G. L. Barnett and the Cullman Savings & Loan Association are the holders of two mortgages on the lands purchased by William Jack Barnett.

As last amended, the bill alleges that Dera Barnett was married in 1906, to one Evans; that some time in 1914 they separated; that in 1922 Dera married one Sams without obtaining a divorce from Evans; that Sams left Dera after several years; that they were not divorced; that Dera, in 1926, came to work for C. A. Barnett as a cook and dishwasher in a cafe or tourist establishment; that an illicit intimacy sprang up between Dera and C. A. Barnett; that, as a result of this relationship, C. A. Barnett was divorced by his wife, Tennessee Barnett, in 1927; that when C. A. Barnett married Dera he believed her to be a single woman but that the relationship was adulterous; and that he "openly continued the adulterous relationship, publicly claiming her as his lawful wife, until his death in 1950."

The bill further alleges that in 1939 C. A. Barnett purchased two pieces of property which were conveyed by the sellers to C. A. Barnett and Dera jointly; that in 1939 C.

A. Barnett was 69 years old, in ill health and mentally weak; that Dera occupied a confidential relationship to him and exerted a dominating influence over him; that as a result of this undue influence she was named as a grantee in the deeds. Similar allegations are made with respect to additional property purchased in 1945. The bill further alleges that in 1943 and 1948, as a result of Dera's undue influence, C. A. Barnett conveyed his interest in these properties to Dera; that on September 9, 1950, the day he died, he joined with Dera in conveying, for a grossly inadequate consideration, a part of this property to William Jack Barnett; that C. A. Barnett was 79 years old, mentally weak and dying and subject to undue influence exercised by Dera; that William Jack Barnett had knowledge of the fraudulent nature of the transaction; that the holders of the two mortgages on the property also had such knowledge. The bill further alleges that in 1951, after C. A. Barnett's death, Dera conveyed certain of the property to the McNeals, also with notice of the fraudulent nature of the transaction.

Appellants seek cancellation of the deeds and mortgages and to be declared, together with G. L. and Sydney H. Barnett, the owners of an undivided one-sixth interest each in the property.

Appellees deny all the allegations of fraud, undue influence and the inability of C. A. Barnett to manage his own affairs. William Jack Barnett, the McNeals and the Cullman Savings & Loan Association deny any knowledge of the alleged fraudulent nature of the transactions.

Appellants take the position that the relationship between C. A. Barnett and Dera Barnett was illicit in its inception and that, being so, the unlawful relationship continued, since the marriage ceremony between them in 1927 was invalid because of Dera's two prior and allegedly undissolved marriages. They further contend that the strong and clear proof required to establish a valid common-law marriage entered into by parties free to do so is lacking; that where one party to an illicit relationship

gives property of considerable value to the other party, excluding natural objects of his bounty, the donee must prove that the gift was freely made and not induced by fraud and undue influence, citing Shipman v. Furniss, 69 Ala. 555, 44 Am.Rep. 528. Appellants further insist that, assuming the existence of a valid marriage between C. A. Barnett and Dera Barnett, the existence of the confidential relationship which exists between husband and wife casts the burden on the grantee or donee in transactions between them to show that the transactions were fair and equitable and not the result of undue influence, and that Dera has not met this burden.

It seems to us that the decree of the trial court adequately and correctly deals with the questions presented here, except as to whether the parties contracted a common-law marriage, assuming that their marriage in 1927 was not valid. It appears that Dera married her second husband, Sams, in March 1922, and that the last information she had concerning him was a telegram she received about 1925 that he had died. Since the marriage ceremony with C. A. Barnett was not entered into until 1927, it is apparent that the required seven years' absence, raising a presumption of Sams' death, had not then expired. The question then presented is whether Dera and C. A. Barnett entered into a common-law marriage. It is our view that even though it should be held that Dera was incapable of entering into a valid marriage with C. A. Barnett in 1927, that, nevertheless, their marriage ripened into a valid common-law marriage prior to the execution of the first deed here involved in 1939.

The following principle from Hunter v. Lynn, 256 Ala. 501, 506, 55 So.2d 849, 853, quoting with approval from Hill v. Lindsey, 223 Ala. 550, 552, 137 So. 395, is peculiarly applicable to the circumstances of this case, viz.:

" '* * * It is the well-settled rule that if parties in good faith marry when in fact a legal impediment exists to their marriage, and they continue to

cohabit as man and wife after the removal of the impediment of their lawful union, the law presumes a common-law marriage. * * *' "

Except as indicated we adopt the following portion of the trial court's decree:

■ "In the bill as last amended, the complainants apparently attempt to bring their case within the influence of the case of Shipman v. Furniss, 69 Ala. 555. This case seems to be the leading case in this jurisdiction laying down principles of law governing gifts between a man and woman who are living in illicit relationship. These principles have been followed in subsequent cases. Under such conditions the burden is on the donee to establish the fact that the gift was in good faith, supported by sufficient consideration, and that it was not a result merely of the undue influence or constructive fraud which grew out of the illicit relationship.

■ "The respondents contend that the relationship between the alleged widow and C. A. Barnett, deceased, was that of husband and wife, and that a ceremonial marriage was performed between said parties, and that there was no illicit relationship existing between them. If this be true, different rules would govern the transactions between the parties. Section 74, Title 34 of the Code of 1940 provides that the relationship between husband and wife is a confidential relationship, and that the relationship must be taken into consideration in determining the effect of transactions between them. Our courts have taken the position that this statute was passed for the purpose of protecting a wife from imposition or advantage in business transactions taken by the husband by reason of influence growing out of the marriage relation. Cragford Bank v. Cummings, 216 Ala. 377, 113 So. 243. This construction is placed upon this statute because under the common law the husband is presumed to be the dominant of the two parties to the marriage and it is assumed that it was necessary to protect the wife's interest in connection with her property by such statute. Norrell

v. Thompson, 252 Ala. 603, 42 So.2d 461; Merchants' National Bank of Mobile v. Hubbard, 222 Ala. 518, 133 So. 723, 74 A.L. R. 646. If the husband is the dominant party in a marriage, which the law presumes is the state of facts, the wife is incapable of exercising undue influence upon him; but the presumption that the husband is the dominant party is merely a presumption, and it is rebuttable. Wherever the evidence is sufficient to rebut this presumption, and to show undue influence exercised by the wife against the husband, courts of equity will intervene to protect against such undue influence.

■ "One of the questions which the Court must decide in resolving the issues in this case, is whether or not C. A. Barnett and Dera Barnett were lawfully married, or whether they were living in an illicit relationship. The evidence shows that the widow, Dera Barnett, married Tom Evans in 1906, and that he abandoned his wife and four children in 1914, and went to the state of Arkansas. He was to have sent for the wife and children, but he failed to do so, and in 1917 Dera Barnett received a newspaper clipping from a friend, stating that Tom Evans had died. The evidence does not show that she, or anyone else has heard of Tom Evans since said time; and she stated that she has not heard from him since then. Sometime later she married a Mr. Sams, and she testified that her husband, Sams, died at Ft. Scott, Arkansas, and that she did not remember the date. She stated that she received a telegram from a daughter of Mr. Sams in Ft. Scott, Arkansas, advising her of his death; and she stated that she has not heard anything from Sams since receiving this telegram. The evidence shows that she went to work for Mr. Barnett in 1927, and that she worked in a cafe and tourist camp for him for a while, and that Mr. Barnett and his wife separated later, and that she and Mr. Barnett went through a ceremonial marriage in Giles County, Tennessee on August 28, 1927. It is the contention of the complainants that the respondent, Dera Barnett, was incapable of contracting marriage because of the fact that she had previously been

660

·married and said marriage, or marriages, had not been dissolved by death or divorce. The complainants do not offer any evidence concerning this issue except the evidence of previous marriages.

" 'Under the decisions of this court, one attacking the (sic) invalidity of a marriage does not meet the burden imposed on him by merely showing that one of the parties to the alleged marriage was previously married. In Sloss-Sheffield Steel & Iron Co. v. Alexander, 241 Ala. 476, 3 So.2d 46, 48, it is said: "The presumption that a marriage is legal and valid in all respects is one of the strongest known to the law, and while it is true that the marriage relation when once proven is presumed to continue, yet this presumption attaches with full force to the latest marriage, the reason being that the presumption of innocence, morality and legitimacy will counterbalance and preponderate against the presumption of the former relations." The burden is on one attacking the (sic) invalidity of the second marriage not only to establish the fact of the previous marriage but that such previous marriage has not been dissolved by. divorce or death. Sloss-Sheffield Steel & Iron Co. v. Watford, 245 Ala. 425, 17 So.2d 166; Freed v. Sallade, 245 Ala. 505, 17 So.2d 868; Sloss-Sheffield Steel & Iron Co. v. Alexander, supra; Bell v. Tennessee Coal, Iron & R. Co., 240 Ala. 422, 199 So. 813; Ex parte McLendon, 239 Ala. 564, 195 So. 733; Walker v. Walker, 218 Ala. 16, 117 So. 472; Ex parte Young, 211 Ala. 508, 101 So. 51.' Faggard v. Filipowich, 248 Ala. 182, 184, 27 So.2d 10.

 "There is also the presumption that the life of a person continues for seven years after he is last heard from, and that his death will be presumed after the lapse of that time; and if a woman contracts a second marriage in the belief, however ignorantly entertained, that she may do so, but when in fact her first spouse is alive, and the parties to the second marriage intending matrimony, not concubinage, live together as man and wife until the lapse of seven years after the first husband is last heard from, then actual marriage is thereby established, because we recognize common law marriages. Walker v. Walker, 218 Ala. 16, 117 So. 472. None of these presumptions is conclusive, and they are subject to being rebutted by evidence in any given case; but where the evidence does not rebut the presumptions, experience and public policy has taught that the presumptions should stand.

 "In the case before us the parties attempted to enter into a valid marriage on August 28, 1927. They lived together as husband and wife from that time until September 9, 1950, a period of more than twenty-three years. During this period of time the evidence shows that these parties labored together in more than one business. A large part of the time the business in which they engaged was a cafe business, operated on a small scale, in which the respondent, Dera Barnett, actively engaged in such things as cooking and serving customers, ·while the deceased, C. A. Barnett, handled the management of the business. The Court is of the opinion that the evidence establishes the fact that both former husbands of the widow were deceased at the time she contracted the marriage with C. A. Barnett. The Court is also of the opinion that even though the evidence had not established this fact, that both former husbands had been absent without cause and unheard of for more than seven years before she attempted to marry C. A. Barnett, and that each of these former husbands was presumed dead at the time she entered into the marriage ceremony with C. A. Barnett. The Court therefore holds that C. A. Barnett and Dera Barnett were lawfully married, and that they were not living in an illicit relationship during the time recovered by the transactions involved in these issues.

 "The facts stated above concerning the operation of the business by the said widow and C. A. Barnett would be sufficient to furnish consideration for the

deeds in question, because the Court finds that a large part of the money which went into the purchase of the said real estate was made by the joint efforts of C. A. Barnett and Dera Barnett. Were there not such evidence before the Court, the burden would be upon the complainants to show that the deceased, C. A. Barnett, did not intend to make her a gift of the property deeded to her in this case. When the relationship of husband and wife is shown, and it is shown that the husband pays for property and puts it in his wife's name, it is presumed that the husband intended to make the wife a gift of said property. North British & Mercantile Ins. Co. v. Sciandra, 256 Ala. 409, 54 So.2d 764, 27 A.L.R.2d 1047. In the case before us this presumption is not rebutted by the evidence.

"The Court therefore finds that there was a valid marriage existing between the parties, and that the rules of law laid down in Shipman v. Furniss, supra, do not apply in the case at bar, and that there was adequate consideration passing between the said Dera Barnett and the said C. A. Barnett in the transactions wherein the said Dera Barnett obtained an interest in said property, and that in addition to said consideration, the law presumes said property is a gift to the wife, and the Court does not find that this presumption has been overturned by the evidence. As stated above, the presumption that the husband is the dominant of the two parties to a marriage is rebuttable. In the case at bar there is little evidence to the effect that the wife, Dera Barnett, was the dominant party. Most of the evidence introduced on this issue is to the effect that the husband, C. A. Barnett, was the dominant party, and the Court does not find evidence sufficient to base a holding of undue influence which is alleged to have been practiced by the wife against the husband. It is true that during that period of time between the time when Dera Barnett started to work for Mr. Barnett, and their marriage, he seems to have been very much infatuated with the respondent, Dera Barnett. No evidence is introduced which shows that she took any active part in attempting to gain his affec-

tions. This relationship was changed to a legal and valid marriage, as held above, before any of the conveyances involved herein were attempted. The Court therefore finds that the presumption that C. A. Barnett was the dominant party in the marriage with Dera Barnett has not been overturned by the evidence, and the Court finds that said Dera Barnett did not practice any undue influence on the said C. A. Barnett in connection with any of the conveyances in question in this suit.

"There was evidence before the Court to the effect that the deceased, and the widow, Dera Barnett, executed a deed to William Jack Barnett to part of the property involved in this case, on the day of the death of the deceased, and about six hours before the time of his death. This property had been formerly deeded to the respondent, Dera Barnett, and C. A. Barnett owned very little interest in the same at the time he executed the deed. This fact would not be sufficient to validate a deed, however, which was otherwise invalid. The testimony shows that Mr. Barnett had been in ill health for several months; that he had been able to converse intelligently with his friends and acquaintances over this period of time, and that he was afflicted with the usual inabilities and weaknesses of old age. Otherwise his ability to transact business affairs was not affected until a few hours before his death. The testimony shows that he was weak and nervous at the time he signed the deed in question, but the Court is of the opinion that the complainants have not borne the burden of proof which is cast upon them of establishing the fact, which is alleged, that he was wholly incapable of executing a deed at this time. As stated above, he merely joined with his wife in conveying what was already her property, under the holding of the Court above. The evidence does not show that the intentions of Mr. Barnett concerning said property will be offended by permitting this deed to stand. The evidence also shows that an adequate consideration was passed by William Jack Barnett to Dera Barnett, and his grand father, for the property. One witness for the complainants

662

testified that the property was worth, in his opinion, $5,000 after William Jack Barnett made certain improvements on the property. The evidence shows that the cost of said improvements was over $2,000, and the consideration paid for the property to Mr. and Mrs. Barnett was $3,500. To further establish the fact that Mr. and Mrs. Barnett were dealing as competent persons in this transaction, the evidence shows that they had agreed to sell this property to William Jack Barnett several weeks before, and that it was not until September 9, 1950, that a loan was completed out of which the purchase price of the property was to be paid. The evidence showed that Mr. and Mrs. Barnett, because of the illness of Mr. Barnett, had become indebted, and it was Mr. Barnett's desire to dispose of the property, and to pay his debts with a part of the money, and use the balance of the money for living expenses. He had no indication, according to the evidence, that his life was about to come to an end as suddenly as it came after the execution of the deed. He seemed to have been attempting to provide for the future of himself and his wife in disposing of the property and obtaining necessary cash. This is in accord with other evidence that Mr. Barnett had not lost all of his power to transact business affairs.

"The validity of the deed from Dera Barnett to the respondents, McNeals, after she became a widow, and the validity of the mortgage from William Jack Barnett and his wife, Theresa Clara Barnett to Cullman Savings & Loan Association, and the validity of the mortgage from William Jack Barnett and wife to Gilbert L. Barnett, depends upon the conveyances already held valid herein, in so far as this case is concerned. Since the Court holds that the grantors in the conveyances to said grantees had good title to the property, it follows that said conveyances are valid."

The decree appealed from is due to be and is affirmed.

Affirmed.

LIVINGSTON, C. J., and SIMPSON and MAYFIELD, JJ., concur.