188 So.2d 552

Thomas O. HUFFMASTER

v.

Ruth Juanita HUFFMASTER.

I Div. 319.

Supreme Court of Alabama.

June 23, 1966.

Coley & Coley, Mobile, for appellant.

A. J. Seale, Mobile, for appellee.

SIMPSON, Justice.

This is an appeal from a final decree granting the appellee, the complainant below, a divorce, and decreeing that the respondent therein, the appellant here, pay to the appellee the sum of $60 each two weeks as alimony, payment to continue until the defendant retires, at which time said payments should be reduced to $75 per month.

It is not contended here that the evidence was insufficient in respect to grounds for divorce. The appellant rather rests his case on the contention that there was no marriage and therefore there could be no divorce, much less alimony and solicitor's fees properly awarded. The appellant's case in this respect arises out of the following:

It is admitted that the parties were married in Pascagoula, Mississippi in 1933. Two children were born to them. Subsequently, in 1945, the appellee wife procured a divorce from appellant in Mobile County. The children at that time were 11 and 8 years of age.

Within a few months after this divorce was granted the parties "went back together". From the time they resumed marital relations they lived together continuously until the husband left home in 1961. This proceeding followed.

The sole question is whether a common law marriage existed between these parties.

As in all cases, the evidence is not entirely consistent. We must only determine whether there was evidence to support the trial court's finding.

The complainant testified that the parties resumed living together:

"A. * * * on account of the children but we just never did have

time to get around to getting married, but we always intended to and once or twice it was mentioned, let's go on and get married and he said as far as I'm concerned we are still married. He said God joined us together and that's the way it is, and if we never go before another justice of the peace or anybody. Now that's his words. He said we're still married.

\* \* \* \* \* \*

"Q. And you simply, you say, never got time, you always intended to get married?

"A. Yes sir, but we were busy and kept putting it off because I guess we were busy making a living and sending the children to school. He said he felt like that we were married and were because we went right on living together."

The appellant in his testimony takes a little different position. He says they both knew they were not married, but said that he had never told anybody else they were not married. On the contrary, he testified as follows:

"Q. All right, you lived together after this divorce, didn't you, in 1945?

"A. Oh, yes.

"Q. And you lived together as husband and wife?

"A. Well—

"Q. You had sex relations didn't you?

"A. I guess you would call it, yes, oh yes.

"Q. And that was 1945 on up to 1961, is that correct? Did you represent to your children that you were husband and wife when you were rais-ing the little children up? Did you hold yourself out as husband and wife to them?

"A. Well, I wouldn't want my children to think I was living in adultery.

"Q. Answer my question please sir.

"A. I did.

"Q. Did you hold yourself out as husband and wife to your neighbors?

"A. I did."

And indeed it would seem so. These parties have lived together continuously since 1933 except for a few months in 1945, up until 1961. They purchased property in their joint names, as husband and wife; the appellant listed the appellee as his wife and beneficiary on insurance policies; they filed joint income tax returns as husband and wife, all subsequent to their first divorce.

 Under this set of circumstances we believe the trial court was justified in finding that a common law marriage existed between these parties. It is axiomatic that such a marriage need not be solemnized in any particular ceremony. There must simply be an actual and mutual agreement "to enter into the matrimonial relationship, permanent and exclusive of all others, after which there was a public recognition of the existence of the common-law marriage." Murphy v. Jacobs, 249 Ala. 594, 32 So.2d 306; Campbell v. Rice, 245 Ala. 395, 17 So.2d 162; Gilbreath v. Lewis, 242 Ala. 510, 7 So.2d 485. We find ourselves in agreement with the trial court that this test was met in this case. A subsequent asserting "we knew we were not married" by a party to such an agreement will hardly vitiate a valid marriage where the original understanding was to presently enter into the marriage relationship, followed by a public recognition of the relationship.

We are further persuaded by the rule enunciated in King v. King, 269 Ala. 468, 114 So.2d 145, where Justice Lawson said:

"The mere fact that the parties could not get together on the time when and the place where they were to have another ceremonial marriage is not sufficient to overcome the presumption of the common-law marriage and the evidence which we think tends to show that they had an actual and mutual agreement to enter into a matrimonial relation, permanent and exclusive of all others, which was consummated by their cohabitation as man and wife and by their mutual assumption openly of marital duties and obligations. See Beggs v. State, 55 Ala. 108; Tartt v. Negus, 127 Ala. 301, 28 So. 713; White v. Hill, 176 Ala. 480, 58 So. 444; Hunter v. Lynn, supra [256 Ala. 501, 55 So.2d 849]; Barnett v. Barnett, supra [262 Ala. 655, 80 So. 2d 626]."

Turner v. Turner, 251 Ala. 295, 37 So.2d 186, relied upon by appellant is distinguishable on its facts. There, there was no present intention to marry but a conditional resumption of the marital relation conditioned upon the husband's quitting drinking. The relationship was never understood by either party as being a marital relationship but was conditioned on the future good conduct of the former husband. They were going to get married sometime in the future if his good behavior continued for a period of time.

Inasmuch as we must affirm the decree appealed from, we do not write to appellee's motion to dismiss. We fix the appellee's solicitor's fee at $200 for his services in this court.

Affirmed.

LIVINGSTON, C. J., and MERRILL and HARWOOD, JJ., concur.