THOMAS, Judge.
Edward Dyess appeals from a judgment of the Jefferson Circuit Court determining that he and Lajune White Dyess entered into a common-law marriage, divorcing the parties, and awarding Lajune certain real property. We reverse and remand.
On February 10, 2010, Edward filed a “complaint to sale [sic] and divide” certain real property located in Birmingham (“the real property”). Both parties agree that they lived together in the house constituting some of the real property since the time the real property was purchased. On February 26, 2010, the case was transferred to the domestic-relations division of the Jefferson Circuit Court. In her answer, filed May 25, 2010, Lajune counterclaimed for a divorce, claiming that she and Edward had a marriage relationship by virtue of a common-law marriage.
The trial court conducted a hearing on May 24, 2011, at which it heard ore tenus evidence as to whether the parties had *386 entered into a common-law marriage, and if so, how to divide the marital property. As the party counterclaiming for a divorce, Lajune presented her case first. The trial court heard testimony from various witnesses, including direct and cross-examination of Edward and Lajune. However, at the close of Lajune’s presentation of evidence, she requested that the trial court preclude Edward from presenting any evidence regarding the issue of common-law marriage because he had failed to file an answer to her counterclaim for a divorce. Although Edward informed the court that he had witnesses ready to testify as to that issue, the trial court granted Lajune’s request. The hearing thus concluded at the close of Lajune’s presentation of evidence.'
The trial court entered a judgment on June 1, 2011, determining that a common-law marriage existed and divorcing the parties. The judgment also awarded La-june the real property but made Edward “solely responsible for the debt on this property” and required him to make all the mortgage payments relating to the real property. Each party was allowed to retain all “financial accounts, retirement and pension funds, and all property he [or she] brought into the marriage.”
On June 30, 2011, Edward filed a post-judgment motion to alter, amend, or vacate the judgment, which was amended on July 1, 2011, specifically asserting that the finding of a common-law marriage was in error. Lajune also filed a motion to alter, amend, or vacate on June 30, 2011. The trial court entered an amended order on August 29, 2011, instructing the parties to sell and equally divide a time-share property in Mexico and instructing Edward to give Lajune $5,369.70 toward payment of her attorney fees. The order denied all other requested postjudgment relief.
On appeal, Edward argues (1) that the trial court erred in finding a common-law marriage, (2) that this case was improperly transferred to the domestic-relations division of the Jefferson Circuit Court, (3) that the trial court failed to equitably divide the parties’ property, (4) that the trial court denied him due process of law, and (5) that the trial court considered improper evidence. We first address the issue whether there was sufficient evidence to support the trial court’s finding that Edward and Lajune entered into a common-law marriage relationship.
Our supreme court has held:
“ ‘Courts of this state closely scrutinize claims of common law marriage and require clear and convincing proof thereof.’ Baker v. Townsend, 484 So.2d 1097, 1098 (Ala.Civ.App.1986), citing Walton v. Walton, 409 So.2d 858 (Ala.Civ.App.1982). A trial judge’s findings of facts based on ore tenus evidence are presumed correct, and a judgment based on those findings will not be reversed unless they are found to be plainly and palpably wrong. Copeland v. Richardson, 551 So.2d 353, 354 (Ala.1989). The trial court’s judgment must be viewed in light of all the evidence and all logical inferences therefrom, and it ‘will be affirmed if, under any reasonable aspect of the testimony, there is credible evidence to support the judgment.’ Adams v. Boan, 559 So.2d 1084, 1086 (AIa.1990) (citation omitted).”
Lofton v. Estate of Weaver, 611 So.2d 335, 336 (Ala.1992).
Clear and convincing evidence is
“ ‘[e]vidence that, when weighed against evidence in opposition, will produce in the mind of the trier of fact a firm conviction as to each essential element of the claim and a high probability as to the correctness of the conclusion. Proof by clear and convincing evidence requires a level of proof greater than a preponderance of the evidence or the substantial weight of *387 the evidence, but less than beyond a reasonable doubt.’
“§ 6 — 11—20[ (b) ](4), Ala.Code 1975.”
L.M. v. D.D.F., 840 So.2d 171, 179 (Ala.Civ.App.2002).
“In Alabama, recognition of a common-law marriage requires proof of the following elements: (1) capacity; (2) present, mutual agreement to permanently enter the marriage relationship to the exclusion of all other relationships; and (3) public recognition of the relationship as a marriage and public assumption of marital duties and cohabitation. Stringer [v. Stringer ], 689 So.2d [194,] 195 [ (Ala.Civ.App.1997) ], quoting Crosson v. Crosson, 668 So.2d 868, 870 (Ala.Civ.App.1995), citing Boswell v. Boswell, 497 So.2d 479, 480 (Ala.1986). Whether the essential elements of a common-law marriage exist is a question of fact. Stringer, supra, citing Johnson v. Johnson, 270 Ala. 587, 120 So.2d 739 (1960), and Arrow Trucking Lines v. Robinson, 507 So.2d 1332 (Ala.Civ.App.1987). Whether the parties had the intent, or the mutual assent, to enter the marriage relationship is also a question of fact. See Mickle v. State, 21 So. 66 (1896).”
Gray v. Bush, 835 So.2d 192, 194 (Ala.Civ.App.2001).
Edward stipulates in his brief to this court that both parties possessed the requisite capacity to marry. We address whether the evidence supported the conclusions that the parties entered into a present, mutual agreement to permanently enter the marriage relationship to the exclusion of all other relationships and that there was public recognition of the relationship as a marriage and the parties publicly assumed marital duties and cohabited with each other.
Edward and Lajune first met in 1996. Later that same year, Edward moved from Wisconsin to Birmingham, at which time he lived with Lajune in a house that she was renting. Edward purchased a house in Birmingham sometime shortly after moving to Birmingham. Lajune lived in this house with Edward until 2002. In 2002, Edward and Lajune purchased the real property, where they lived together until 2010, at which point Edward moved back to Wisconsin.
At trial, Edward testified that he did not consider Lajune to be his wife. He further stated that he had explained to La-june at the beginning of their relationship that he did not intend to get married because of his two previous failed marriages. Edward admitted that he had referred to Lajune as his wife one time in order to purchase a time-share in Mexico. According to his testimony, “they told [him] in order to buy the property down there [he] had to put husband and wife”; therefore, he testified that he had intentionally misrepresented their relationship.
Lajune presented three witnesses who testified to their beliefs that Lajune was married to Edward. Each witness described instances when Lajune was referred to as Edward’s wife and he did not publicly object. However, when asked directly by opposing counsel if Edward had ever introduced her as his wife, Lajune responded, “[s]everal times, ... [he said] this is my significant other.” (Emphasis added.) She further testified that, in 1997, when asked by Edward’s cousin if they were married, she replied, “no, not yet.”
Edward and Lajune both testified that they did not have any joint bank accounts. Both of their names appear on the special warranty deed and the mortgage document for the real property in Birmingham. However, on the special warranty deed they are listed as “Edward L. Dyess, a single man, and Lajune White, a single woman, as joint tenants.... ” (Emphasis added.) Likewise, the mortgage document lists them as “Edward L. Dyess, an un *388 married man, and Lajune White, an unmarried woman.” (Emphasis added.) The mortgage on the real property was paid solely by Edward. Lajune was responsible for paying for the utilities.
Lajune introduced into evidence, over Edward’s objection, a funeral program, a greeting card, and a newspaper article. The program was for Edward’s niece’s funeral and listed surviving family members. Lajune testified that the program lists her as Edward’s wife. Edward and Lajune were included in the program in the following manner: “Edward (LaJune) Dyess of Birmingham, Alabama.” The greeting card reads “for my wife” on the front. Lajune testified that Edward sent her the card for her birthday; however, Edward did not recall sending the card and was unsure if the signature on the card was actually his signature. Finally, Lajune is identified in a newspaper article as Lajune White Dyess, although Lajune testified that she did not know who provided this information to the newspaper.
In support of the trial court’s conclusion that the parties had entered into a common-law marriage, Lajune cites King v. King, 269 Ala. 468, 114 So.2d 145 (1959). That case, however, is easily distinguished from this case. The parties in King were ceremonially married and lived together as husband and wife for approximately six years before Mrs. King discovered a legal impediment to their marriage.[1] 269 Ala. at 470, 114 So.2d at 146. Once the impediment was removed, the Kings lived together for approximately four months. 269 Ala. at 471, 114 So.2d at 147. Mr. King argued that, because they did not have another marriage ceremony after the removal of the legal impediment, the two were never married. Id.
In King, our supreme court held: “It is the well-settled rule that if parties in good faith marry when in fact a legal impediment exists to their marriage, and they continue to cohabit as man and wife after the removal of the impediment to their lawful union, the law presumes a common-law marriage.” Id. (citing Barnett v. Barnett, 262 Ala. 655, 80 So.2d 626 (1955); Hunter v. Lynn, 256 Ala. 501, 55 So.2d 849 (1952); and Hill v. Lindsey, 223 Ala. 550, 137 So. 395 (1931)). In the present case, there was no such legal impediment preventing the parties from marrying. Although Lajune testified at trial that Edward’s cousin, a preacher, “blessed their union,” at no time did Edward and Lajune participate in a marriage ceremony pursuant to a duly issued marriage license. Therefore, the holding in King is not applicable to the present case.[2]
As stated above, the existence of a common-law marriage must be shown by clear and convincing evidence. See Lofton, 611 So.2d at 336. We conclude that the evidence presented by Lajune is insufficient to show by clear and convincing evidence that the parties’ exhibited a present, mutual agreement to permanently enter the marriage relationship to the exclusion of all other relationships or that the parties’ relationship was publicly recognized and that the parties publicly assumed marital duties.
“ ‘It is indispensable that the parties must comport themselves in such a manner as to achieve public recognition of their status as common-law man and wife.’ Bishop v. Bishop, 57 Ala.App. *389 619, 622, 330 So.2d 443, 445 (Ala.Civ.App.1976).
“We have stated:
“ ‘ “[T]he marriage relationship may be shown in any way that can be known by others, such as living together as man and wife, referring to each other in the presence of others as being in that relation, declaring the relation in various types of documents and transactions, sharing household duties and expenses, and generally engaging in ‘all of the numerous aspects of day-to-day mutual existence of married persons.’ ” ’
“Hall v. Duster, 727 So.2d 834, 837 (Ala.Civ.App.1999) (quoting Bishop v. Bishop, 57 Ala.App. at 621, 330 So.2d at 445). The fact that the parties may have lived together or cohabited, standing alone, is insufficient to show that the parties had entered into a common-law marriage. See Beck v. Beck, 286 Ala. 692, 698, 246 So.2d 420, 426 (1971) (‘[I]n order to constitute a valid common-law marriage, the man and woman, following their mutual consent to live as man and wife, must so live as to gain the recognition of the public that they are living as man and wife rather than in a state of concubinage.’).”
Reese v. Holston, 67 So.3d 109, 112-13 (Ala.Civ.App.2011).
First, the evidence did not show that the parties managed their finances in a way that would be consistent with a marital relationship. The parties maintained separate banking accounts. In fact, Edward recently added his daughter, who has his power of attorney, not Lajune, as a second owner/signer to his checking account. Although both of their names do appear on the deed and the mortgage document relating to the real property, those documents clearly indicate that the parties are single and unmarried, respectively. Further, Edward testified that he consistently filed his income-tax returns as an unmarried individual. Lajune testified that she last filed an income-tax return in either 1999 or 2000, at which time she also filed as an unmarried individual.
Second, there is insufficient evidence to show that the parties’ relationship was publicly recognized as a common-law marriage. Lajune produced witnesses who testified to their beliefs that Edward and Lajune were married. Their beliefs were primarily based upon instances when Edward did not publicly object to inferences by other people that Lajune was his wife. One witness testified that Edward once said to her, “you [are] the one that is keeping my wife away from the house all the time.” However, Lajune also testified that Edward introduced her as his significant other, not as his wife. According to the record, the only instance in which Edward referred to Lajune as his wife was when he purchased the time-share in Mexico. It is undisputed that Lajune did not change her name on her church roll, the utility bills, her retirement account, her widow’s pension, or with the Social Security Administration.
The only other evidence Lajune introduced at trial was documentary evidence including the funeral program, the greeting card, and the newspaper article.[3] However, those documents are insufficient to “ ‘meet the required standard of a persuasive pattern of unambivalent conduct, *390 but rather are too few and isolated.’” Reese, 67 So.3d at 113 (quoting Bishop v. Bishop, 57 Ala.App. 619, 622, 330 So.2d 443, 446 (Ala.Civ.App.1976)).
Because the evidence before the trial court was insufficient to support its determination that the parties had clearly and convincingly entered into a common-law marriage, we reverse the trial court’s judgment insofar as it determined that the parties were married. Consequently, because we hold that the parties were not married, the trial court’s division of property is also due to be reversed. Because we reverse the trial court’s holding that the parties were married and the division of property, we need not address Edward’s remaining issues. We therefore remand the cause with instructions for the trial court to enter a judgment consistent with this opinion.
REVERSED AND REMANDED WITH INSTRUCTIONS.
THOMPSON, P.J., and PITTMAN, J., concur.
MOORE, J., concurs in the judgment of reversal but dissents as to the rationale and the remand instructions, with writing, which BRYAN, J., joins.

. Mrs. King learned that Mr. King’s previous marriage had not been dissolved.

. Lajune also cites Barnett v. Barnett, 262 Ala. 655, 80 So.2d 626 (1955). Like in King, the parties in Barnett also overcame a legal impediment to a ceremonial marriage, and, therefore, the holding in Barnett is not applicable to this case.

. Edward argues on appeal that the trial court erred in admitting those items into evidence, because, he argues, they were not properly authenticated, as required by Rule 901, Ala. R. Evid. Because we conclude that, even considering the funeral program, the greeting card, and the newspaper article, the evidence was insufficient to support the existence of a common-law marriage, the trial court’s error, if any, in admitting those items into evidence was harmless. See Dinmark v. Farrier, 510 So.2d 819, 820-21 (Ala.1987).