THOMAS, Judge,
dissenting.
I respectfully dissent. In my view, the evidence presented does not support a conclusion that Elizabeth McMullins and Larry R, McMullins failed to comport themselves in such a manner as to achieve public recognition of their status as common-law husband and wife. See Dyess v. Dyess, 94 So.3d 384, 387 (Ala.Civ.App.2012) (quoting Gray v. Bush, 835 So.2d 192, 194 (Ala.Civ.App.2001)).
I find it beyond dispute that Elizabeth elicited testimony indicating that the parties had achieved public recognition of their status as common-law husband and wife. Most persuasive to me is Larry’s deposition testimony in 2005, in which he publicly claimed Elizabeth as his common- *337 law wife and certainly achieved judicial recognition of that status because the trial court awarded custody of Elizabeth’s late son’s children to Larry and Elizabeth. The following exchange is recorded in Larry’s October 25, 2005, deposition:
“[The attorney]: And are you married?
“[Larry]: We’ve never gone through the ceremony but we consider ourselves to be.
“[The attorney]: So you consider yourself to be common-law married?
“[Larry]: Yes.”
Furthermore, Larry himself, as well as three of Elizabeth’s five witnesses, testified that from 2005 through 2012 the marriage relationship was recognized. Debbie Mitchell said that she had believed that the parties were married. Rachel Dunna-way testified that the parties had lived together. Larry, Mitchell, and Carmon Hall each testified that Elizabeth and Larry had publicly referred to one another as “husband” or “wife.” Larry and Hall testified regarding various types of documents and transactions that declared the marriage relationship, including a joint banking account and joint income-tax documents. The parties and the witnesses testified that Larry and Elizabeth had shared household duties and expenses and that they had engaged in numerous aspects of the day-to-day mutual existence of married persons, including celebrating holidays together, participating in school activities together, vacationing together, hosting parties in their residence, and rearing children together.
Clearly, by the time of the trial, the witnesses were aware that the parties were never ceremonially married, and the testimony reflects that awareness; however, if the courts of this state have struggled to apply the correct law, then ordinary witnesses cannot be expected to decisively testify regarding whether the parties are married at common law, especially when, arguably, at the time of the trial, the witnesses remain unaware of the elements required to achieve a common-law-marriage relationship. Thus, I respectfully dissent from the main opinion’s determination that the witnesses’ sometimes equivocal testimony amounts to “conflicting” evidence or “credible evidence [that] supports the trial court’s determination that there had not been a public recognition of the parties’ relationship as a marriage and the public assumption of marital duties.” 202 So.3d at 336.
That said, this case vividly illustrates that the time has come to abrogate common-law marriage in Alabama. The availability of common-law marriage gave Larry and Elizabeth the ability to use the doctrine to receive the benefits of marriage when it suited them and gave them the ability to deny it when it did not. I urge the legislature to end the confusion existing around common-law marriage by enacting a statute specifically denying further legal recognition of certain relationships as common-law marriages; I recommend that such a statute should have prospective application only and that all common-law marriages entered into before the statute is enacted be considered legally valid. Of course full faith and credit must be given to all common-law marriages entered into in jurisdictions that continue to recognize common-law marriage.
In my view, no need for common-law marriage exists. It is antiquated, uniformly misunderstood, and promotes a lack of commitment that now serves to jeopardize the definition of marriage more than ever before in our state’s history. Our laws have evolved to adequately protect economically dependent single parents as well as the inheritance rights of children born *338 out of wedlock. Unlike in the past, ceremonial marriage is readily available to all. The acquisition of a marriage certificate removes any dispute regarding the validity of the marriage relationship and any risk that an impediment to a marriage exists. Requiring a minimal effort to access the benefits of marriage is not too much to ask when documentation of a person’s marital status will improve both judicial and business efficiency.
Judicial recognition of common-law marriage has led to unnecessary litigation, perjury, and fraud for too long. Common-law marriage should not be encouraged or tolerated when a bright-line standard for determining marital status is readily available. The legislature, by its silence, should not require the courts of this state to continue to struggle to separate fraudulent claims of marriage from valid ones when requiring parties who wish to enter into a marital relationship to obtain a marriage certificate would decisively solve the problem.