## LUDWICK LONG *vs.* CHRISTIAN LONG and others.

In the absence of proof to the contrary, this court will assume the verity of the statements made in an interlocutory decree, under the act of 1820, ch. 161, and assume that it was legitimately passed.

Where no exceptions are taken to the testimony in the court below, by a party who has appeared to the suit and failed to answer, none can be entertained by this court.

Where the grantor in a deed is a man of weak mind, and this mental imbecility has been unduly taken advantage of by the grantee, the deed will be vacated by a court of equity.

But in such a case the grantee is entitled to be reimbursed the money paid, or secured to be paid *bona fide* by him, for the property conveyed by the deed.

APPEAL from the Equity side of the Circuit Court for Carroll County.

The object of the bill in this case is to vacate *five* several deeds of real estate to the appellant: the *first* dated April 4th, 1846, from Henry Long to Ludwick Long, conveying 154 acres of land, for the consideration of $1500; the *second,* dated June 6th, 1848, from John T. Johns to Ludwick, conveying a small tract of land which had been purchased by Ludwick and Henry *jointly;* the *third,* dated June 21st, 1852, from Henry to Ludwick, conveying another small tract; the *fourth,* dated August 6th, 1852, from Henry to Ludwick, conveying, for the consideration of $1000, the same land conveyed by the deed of April 4th 1846; the *fifth,* dated May 9th, 1853, from Amos Evans and wife to Ludwick, conveying still another small tract of land which Henry had purchased and paid for.

Henry Long was found, by inquisition taken on the 1st of September 1853, to be a lunatic, and to have been such from the 1st of September 1850. He died in 1854, over eighty years of age, without leaving children, and his brother Ludwick became his administrator. The bill in this case was filed by the appellees, heirs at law of said Henry, against Ludwick and the grantors in the deeds of 1848 and 1853. It alleges, that at the date of the first deed, Henry was a very ignorant and illiterate man, and his mind very weak and easily imposed on by those who possessed his confidence; that Lud-

wick had great and undue influence and control over the mind of Henry, and induced him to execute this deed, by the exercise of this undue influence, by imposition practiced upon him, and advantage taken of his ignorance and weakness of intellect, by promising to re-convey the property to him whenever he should request it to be done, and by pretending that Henry's ownership of the land would not be changed by the deed, but that it would, in fact, continue to belong to him; that Henry in fact remained in possession of the property, claiming and treating it as his own until he was declared a lunatic, and Ludwick always alleged that it belonged to Henry, and never took possession or claimed any title to it until that time; that Ludwick never paid a dollar of the consideration mentioned in this deed, or any other consideration whatever; that afterwards, on the 6th of August 1852, Ludwick entered, into a pretended negotiation with Henry, for the purchase of, and induced him to execute the deed of that date, for the same lands; that of the consideration ($1000) in this last deed, not one dollar was *in fact* paid by Ludwick to Henry, but that he pretended to pay him $100 in cash, and to execute and deliver to him his notes for $900, which money and notes were immediately afterwards taken from him by Ludwick, or his sons and agents, and these notes have ever since been in his possession, or that of his sons and agents; that since Henry's death, Ludwick has administered upon his estate, and if he has charged himself with these notes, in his account in the orphans court, it has been with the fraudulent intent of endeavoring to make good his title to said lands, which are worth from $3000 to $4000, for the inadequate sum of $900; and that this pretended purchase, payment and delivery of notes, and execution of the deed, all occurred after Henry was a lunatic.

In reference to the other deeds from Henry to Ludwick, the bill alleges, that they were obtained in the same fraudulent manner, and without consideration, by Ludwick, who also induced the grantors in the other deeds, to convey the title to him by the like fraudulent means and undue influence exercised over said Henry, in inducing him to direct the convey-

ances so to be executed. The prayer of the bill is, that all these deeds may be vacated and the property conveyed to the heirs at law of said Henry.

The other defendants answered, assenting to a decree, as prayed. Ludwick Long appeared, but failed to answer, and an interlocutory decree was passed against him, and proof taken under an *ex parte* commission.

A number of witnesses who had known Henry Long for twenty, twenty-five, and thirty years and more, testified, that during all that time he was a man of very weak mind, and ignorant; that he could write his name, but nothing more; could read print perhaps, writing but very little, and could be easily imposed upon by any one who had his confidence; that his brother Ludwick was his confidential friend and adviser in all business matters, and possessed great and undue influence over him; had the entire control over him; could induce him to execute such deeds of his property as no other person could; could, by persuasion, induce him to do anything he wished. One witness states, that he does not think Henry Long was, at the date of the *first deed*, capable of making a contract, or would know what he was about if he had attempted to make one. Another testifies, that for eight or ten years prior to Henry's death, Ludwick did, as witness supposes, exercise great and undue influence over him, and induced him to do almost anything. It was also proved, that Ludwick paid none of the consideration mentioned in the first deed, and never claimed any title to the land conveyed by it until 1852, and that till this time Henry remained in possession, treating and claiming it as his own.

*Isaac Pouder* testified, that he held a joint note against Henry and Ludwick, and hearing that the former had conveyed all his property to the latter, witness called on Ludwick to inquire about it, when *Ludwick said* Henry had conveyed all his property to him, but that was nothing; that Eve Long, his sister, had brought suit against Henry for a claim, and the conveyance was only intended to prevent the recovery of this claim from Henry; witness knows this suit was pending in 1846. *William Stansbury* testified, that he heard Ludwick

and Henry both together say, in witness's presence, some time after the first deed was executed, it was made for the purpose of preventing Eve Long, their sister, from recovering a small claim for which she had sued Henry; that Henry, also, then said to Ludwick, "You have not conveyed back to me the property I conveyed to you;" to which Ludwick replied, "I told you several times to go to Abraham Wampler and have a deed of reconveyance drawn to you and I will execute it;—I am willing to do it at any time."

The docket entries in this suit, by Eve Long, show that it was brought in 1846; that Henry was taken under the writ, put in jail and released on special bail; that judgment was rendered for the plaintiff in September 1847, *"for* $8, *costs of suit,"* which was collected under a *fi. fa.*

*Jesse Manning,* one of the justices before whom the deed of August 6th, 1852, was acknowledged, testified, that on the same day, after the execution of the deed, he was requested by Ludwick to draw nine promissory notes of $100 each, in favor of Henry; that Ludwick then gave Henry $100, which witness thinks Henry returned to Ludwick; that witness drew the notes on a sheet of paper and remarked to Henry, that he would not separate them, because he (Henry) might lose them; that Henry repeatedly remarked, in the course of the interview, that he did not know whether he could pay the notes, when witness told him that Ludwick had to pay them, but Henry still insisted he would not be able to pay all the money for which the notes were given; that Henry frequently offered these notes to Ludwick, but witness does not know whether the latter took them or not; that witness does not believe Henry knew he had executed this deed.

*Amos Evans,* the grantor in the deed of 1853, proved that Henry bought the land, conveyed by that deed, from him, in 1846, and paid him the purchase money therefor; that Ludwick brought him a deed to execute, which, on examination, was found to be a deed to Ludwick, and witness refused to execute it, saying he was bound to make a deed to Henry, to which Ludwick replied, that "it did not make any difference, that witness could as well deed to him as to Henry," but wit-

ness still refused, when Ludwick brought witness an order from Henry directing the deed to be made to Ludwick, and it was executed accordingly. (This order was signed by Henry, by making his mark, and directs Evans to execute the deed to Ludwick, in consideration of having received from him $155.62½ on the land.)

The proceedings under the inquisition of lunacy were also filed under the commission. The court (NELSON, J.) passed a decree in conformity with the prayer of the bill, from which Ludwick Long appealed.

The cause was argued before LE GRAND, C. J., ECCLE-STON and MASON, J.

*James Raymond* for the appellant, argued :

1st. That this being an application to the conscience of the court to vacate deeds, it will take into consideration all that has transpired up to the time of filing the bill, and unless the plaintiffs have equity upon the whole case, relief will be denied as to all the deeds. It is therefore insisted, that the second deed of August 6th, 1852, *and the consideration of it,* comes in aid of the first deed of April 4th, 1846, if aid be wanted. There is no proof in the record that the appellant ever *exercised* any undue influence over his brother; there is proof that he *possessed* such influence, but the mere fact that a party *possesses* the power to *do evil* is not sufficient, unless followed up by some *exercise* of that power. Where is the evidence in the record, that Ludwick Long ever exercised this influence which he possessed over the mind of his brother? As to the deed of 1846, there is no evidence that he ever *knew of its existence.* The second deed of 1852 is only *prima facie* void by reason of lunacy, and if the court can see that *in fact* it was an honest transaction, it will be sustained; a lunatic's deed is only *prima facie* void; that is, void in the absence of any proof either way, but *proof* of honesty without notice of lunacy makes it good; lunacy only alters the presumption in the absence of proof. 2 *Kent's Comm.,* 450, 451, 455, 562, *note* 1.

2nd. The deed of 1846, is good and valid, even without

consideration, as between the parties to it and their representatives. The evidence, so far from presenting a case of fraud and over-reaching of a weak brother by the appellant, shows exactly the reverse; and the most that the evidence tends to prove against him is, that he suffered that brother to use his name in a deed made by that brother to cheat their sister, Eve Long, and defeat the law. If there was any fraud in this deed Henry was a participant in it,—he was *in pari delicto,* and the principles of *Freeman vs. Sedwick,* 6 *Gill,* 29, must be applied to the case, and the relief asked be refused.

3rd. This decree was passed upon evidence taken upon an *ex parte* commission under the act of 1820, ch. 161, after an interlocutory decree, and it is insisted that the proceedings are irregular, the requisitions of that act not having been complied with. This act authorises an interlocutory decree, upon failure to answer, "within the time or times which are or may be prescribed by the rules of the court, from which the said writ issued, for answering" the bill. In this case the bill was filed on the 1st of December 1854, and on the same day the *subpœna* was issued, returnable on the first Monday, being the 4th day of that month, was returned *"summoned,"* and the appellant appeared on that day. The interlocutory decree was passed on the 13th of April 1855. Now there is nothing in the record to show, that there was any April-term of the equity court for Carroll county in April, or any *rule of that court* limiting the time for answer to that specified in the decree. If there was an April term, the rule to answer must have extended to that term. The proceedings therefore were irregular, and for this reason the final decree should be reversed.

4th. The interrogatories are objected to as illegal, by being *leading,* and it is claimed that all the evidence should be suppressed on that ground.

*Oliver Miller* and *Wm. P. Maulsby* for the appellee, moved the court to dismiss the appeal for the same reason stated in the case of *Lippy vs. Masonheimer, Ante* 310, and then argued:

1st. That all these transactions, from beginning to end, are

45    v.9

gross and palpable frauds, perpetrated by the appellant, by means of the undue influence and control which he had over the weak and imbecile mind of his brother. All the deeds, except two, were executed after the period at which Henry Long was found to be a lunatic, and all the acts of a lunatic, from the time he was found to be *non compos*, will be *avoided* in equity upon bill filed. (1 *Story's Eq.*, *secs.* 225, 227, 228.) The court below was right, therefore, in declaring the *three* last deeds void upon the proof of lunacy contained in the inquisition. The other deeds we assail, and the bill assails, as obtained by undue influence, amounting to *fraud*, perpetrated upon and exercised over a *weak minded* man, confiding in the representations made by his brother, the appellant, in whom he had the utmost confidence. 1 *Story's Eq.*, *secs.* 218, 222, 234 to 238. 6 *H. & J.*, 443, *Watkins vs. Stockett.* That he *possessed* this influence is abundantly shown by the proof, and is admitted by the counsel on the other side. That he *exercised* it, we think, is equally clear from the proof. All the circumstances in the case show it. He never paid a dollar for the property conveyed by these deeds: the manner in which he obtained the deed from *Evans;* — the testimony of Stansbury and Manning; — the acts and dealings after the lunacy; — his failure to answer the bill charging gross fraud against him; — all show there was no want of *exercise* of the influence it is admitted he possessed.

2nd. There is no allegation or proof in the cause to show, that the deed of 1846 was made in fraud of the creditors of Henry Long. There is no evidence that he was *indebted* to Eve Long, his sister, in any sum. On the contrary, the docket entries showing a judgment for *costs only*, proves that he was not indebted to her. The law will not by presumption impute a fraud to Henry, which, in any view of the case, could only be shown by proof that he was actually indebted, and that the deed was made by him with a deliberate purpose to defraud his creditors. We are not therefore obliged to encounter the settled rule, that the law will withhold all relief from parties standing in *pari delicto*, in controversies which might tend to the consummation of agreements in fraud of the law, or of any

person, affirmed in the case of *Freeman vs. Sedwick*.   But if it had appeared that Henry was actually indebted at the date of this deed, and that it was made in fraud of creditors, we insist, that under all the proof in the case, the fraud would be imputable to the appellant alone, and he would not be permitted, in a court of equity, to advantage himself by means of a fraudulent contrivance devised by himself, the confidential adviser and absolute controller of the weak mind of his imbecile brother, and imposed by him on that brother.   The consent of Henry, if obtained to a fraudulent conveyance as against creditors, was obtained by Ludwick, by meditated imposition or undue influence, and will be treated as a delusion, and not as a deliberate and free act of the mind, in such a controversy as this.   1 *Story's Eq.*, secs. 222, 235.   The proof of *Stansbury* is, that Henry was not capable of making a valid contract at the time this first deed was executed.   How can it be said that such a mind could perpetrate a deliberate fraud, and that too upon his *sister?*   The maxim *in pario delicto potior est conditio defendentis*, by its very terms imports that there must be *equal* fault in both parties, the parties must be *"strictly in pari delicto."*

3rd.  The interlocutory decree upon its face, states, that the appellant "has *failed* to file his answer" to the bill, and is in the very form prescribed in *Alex. Ch. Pr.*, 338.  It in fact asserts that the time to answer had elapsed, and, *in the absence of all proof to the contrary*, this court must assume the verity of this statement, and presume that the decree, *pro confesso*, was legitimately passed.  8 *G. & J.*, 148, *Calwell vs. Boyer.*

4th.  No exceptions having been taken to the testimony in the court below, none can be urged here, (act of 1832, ch. 302, sec. 5,) and this is a conclusive answer to the point, that our interrogatories were leading, and that the testimony ought to be suppressed.

MASON, J., delivered the opinion of this court.

The motion to dismiss the appeal, in the present case, is overruled upon the authority of *Lippy vs. Masonheimer*, decided at this term.

We can discover no such irregularity in the proceedings in this case, as to warrant a reversal of the decree. 8 *Gill & John.*, 148. 9 *Do.*, 71.

No exception having been taken by the appellant to the admission of testimony at the proper time, although he had appeared to the suit, no objection to it can now be entertained by this court.

The proof legally in this case, is sufficient to support the substantial allegations of the bill, and to entitle the complainant to the relief sought. The proof clearly establishes the mental imbecility of Henry Long, and that this imbecility had been unduly taken advantage of by the appellant. The testimony is full upon both points.

The mental condition of Henry Long was such as to preclude the idea that he was capable of entering into a fraudulent combination, as was alleged in argument, so as to place him in any of the transactions in question, in *pari delicto* with the appellant.

In thus disposing of the case we do not wish to be understood as denying the right of the appellant to be reimbursed the money paid, or secured to be paid, *bona fide* by him for the land of his brother. Whatever he can show in this regard, he is entitled to have awarded to him, and to that end the cause is remanded for further proceedings.

*Cause remanded for further proceedings.*