. 106 So.2d 245

Irene V. HACKMEYER

v.

J. Tillman HACKMEYER.

1 Div. 742.

Supreme Court of Alabama.

March 6, 1958.

Rehearing Granted Oct. 30, 1958.

Bart B. Chamberlain, Jr., Mobile, for appellee.

Harry Seale, Mobile, for appellant.

**PER CURIAM.**

The opinion of the court heretofore announced is withdrawn and the following opinion is substituted in lieu thereof.

This is an appeal by complainant, in an original bill in equity, from a final decree denying relief to her but granting relief to her husband on his cross bill. The original bill sought a decree of divorce on the ground of cruelty, and a division of certain property, the title to which was in them jointly.

The answer and cross bill is in two aspects: (1) It seeks a vesture in cross complainant of the interest which the original complainant has in the property, and which she seeks to have partitioned; and (2) an annulment of the marriage between the parties which occurred on December 24, 1952. The cross bill alleges in substance that it is true that the title to the property sought by the original bill to be partitioned between them is in complainant and respondent jointly. But he alleges that the entire purchase price of each of said parcels was paid by him exclusively, and no contribution toward the purchase price of any of it was paid by complainant; that he caused or permitted the title to be taken in their joint names in the belief that prior to the date on which a marriage ceremony between them occurred, she had obtained a divorce from her former husband (one Creecy), but that she had not in fact obtained a divorce from him and, therefore, did not become respondent's lawful wife as she averred in the original bill, and that the placing of an undivided interest in her name in the property mentioned was made in the belief that she was his lawful wife when in fact she was not.

The cross bill further avers that prior to this alleged or purported marriage, complainant had married one Elmer Creecy in Quebec, Canada, and that he is now living in Hattiesburg, Mississippi; that complainant separated from him and thereafter she represented that a divorce had been obtained dissolving the bonds of matrimony theretofore existing between her and said Creecy, and that she was free to remarry, whereupon, and in reliance upon said representations, the respondent entered into a ceremonial marriage with complainant and thereafter lived with her for a number of years in the continuing belief that her former marriage had been dissolved, and in reliance upon her said representations, he conveyed or caused to be conveyed to her a certain interest in said parcels of real estate, and that no contribution toward the purchase price thereof was made by her. The cross bill prayed that their marriage be cancelled and annulled, and that complainant be required to convey to respondent all the right, title and interest in said property which had been owned or purchased by respondent and as to which a deed was made conveying an interest to complainant.

There was no demurrer to the original or cross bill. The cause came on for hearing on evidence, most of which was given ore tenus before the presiding judge. He rendered a final decree in which he first decreed that complainant should execute to respondent a conveyance of her interest in the property which is fully described. And upon default thereof, the register was directed to do so. The decree also annulled and voided ab initio the alleged or purported marriage between the parties which occurred on December 24, 1952. The decree taxed respondent with the costs.

The evidence showed that complainant was born in France and lived in a Catholic orphanage there until she reached a certain age when she was sent to a similar home in Canada where she remained until she was about twenty years of age when she married said Creecy. They later moved to Mobile, Alabama, to reside and continued to live together until 1943 (as she says), but perhaps several years after that. They were both employed, she for a well drilling company in which she had a very responsible position; and Creecy had a good position with another company.

A decree of divorce rendered by a chancery court of Arkansas purported to dissolve the marriage of Creecy with another woman named Emma, to whom Creecy had been married before he married complainant Irene, was introduced in evidence by complainant. That decree was dated October 10, 1946. It was not certified as required by Tit. 7, § 427, Code, nor by the Act of Congress, Revised Statutes, § 905. Respondent objected to its introduction because it was not duly certified. That objection was well taken, but was overruled. The ruling was favorable to complainant and she cannot complain, and respondent is not complaining, so it becomes legal evidence. Under Tit. 7, § 372(1), Pocket Part, Code, objection was not necessary, but when it was made and ruled on that statute, by its terms, does not apply.

We think it clear that Creecy had been married before he and Irene (complainant) were married. Their marriage was void because of such previous marriage by Creecy and was not in the way of a lawful marriage by Irene with respondent Hackmeyer on December 24, 1952. Her statement to respondent that she and Creecy had been divorced was untrue according to the evidence; but her ceremonial marriage with Creecy was void by reason of his previous marriage, and did not cause her marriage with respondent to be void. But after the decree of October 10, 1946, by which the marriage of Creecy and Emma was dissolved, the evidence is abundant that for several years Irene and Creecy continued to live together as husband and wife.

The rule of law in that connection is thus stated in Hill v. Lindsey, 223 Ala. 550, 137 So. 395, 397:

"* * * It is the well-settled rule that if parties in good faith marry when in fact a legal impediment exists to their marriage, and they continue to cohabit as man and wife after the removal of the impediment of their lawful union, the law presumes a common-law marriage. * * *"

This principle is quoted in Hunter v. Lynn, 256 Ala. 501, 506, 55 So.2d 849, and in Barnett v. Barnett, 262 Ala. 655, 658, 80 So.2d 626.

Upon the principle declared in Hill v. Lindsey, supra, such continued cohabitation at a time when both could contract a legal marriage by common law, Irene and Creecy contracted such marriage which the facts and circumstances together with Irene's testimony show was never dissolved. The validity of the marriage between Irene and respondent Hackmeyer is dependent upon the absence of a common-law marriage between Irene and Creecy created after October 10, 1946. To justify his decree annulling the marriage between Irene and respondent, the trial judge must have found that there was a common-law marriage between Irene and Creecy effective after October 10, 1946.

In this connection, the decree uses some very strong language condemning Irene and her testimony. She, through counsel, has taken sharp exception to this finding by the judge and has moved to strike it from the decree, asserting that the decree was prepared by counsel for respondent. But, if so, that circumstance is not reprehensible for such custom is of long standing. 30 C.J.S. Equity § 590, p. 979. It was in the nature of fact finding and its form is not subject to review.

Assuming that Irene stated to respondent Hackmeyer that she and Creecy were divorced, such statement was not harmful until and unless she and Creecy had contracted marriage by common law after October 10, 1946. But such statement was very material and pertinent in respect to her true status on December 24, 1952, when Irene and respondent were married. The evidence does not show that respondent knew of the relations between Irene and Creecy on and after October 10, 1946, but that he thought Irene was free to marry him.

We think the evidence of such common-law marriage between Irene and Creecy is sufficient to show that the mar-

riage between Irene and respondent Hackmeyer was void and properly annulled as decreed by the trial court.

■ We come now to the action of the trial court in ordering appellant to convey to appellee her interest in the property which was deeded to them jointly. The rule in Alabama is stated in Shipman v. Furniss, 69 Ala. 555, by the court where it said:

"The following principle, we think, is sound both in law and morals, and, though a departure from the former rule, is sustained by the more modern authorities: When one, living in illicit sexual relations with another, makes a large gift of his property to the latter, especially in cases where the donor excludes natural objects of his bounty, the transaction will be viewed with such suspicion by a court of equity, as to cast on the donee the burden of proving that the donation was the result of free volition, and was not superinduced by fraud or undue influence. How much further the principle may be extended, if any, it is neither our province nor purpose now to consider."

That opinion also includes the following:

"There is another view of this case not considered by the chancellor, which, we think, would compel an affirmance of his decree. The deed of gift, made by Joel Mathews, and which is here assailed, was executed by him either with an honest belief that his marriage was lawful and valid, or else that it was unlawful and adulterous. If the first supposition be true, the deed was executed upon the false and fraudulent hypothesis that the donee was his lawful wife, and could, for this reason, be avoided as having been procured by artifice, circumvention and fraud.—Coulson v. Allison, 2 De G., F. & J., Eng. Ch. 521. If the other supposition be true, the donor being aware of his illicit relationship to Mrs. Shipman, the conveyance must be construed, under all the facts of the case, to have been made in contemplation of the continuance between the parties of their adulterous intercourse, and this would present the case of an executed contract upon an illegal consideration. And against such a contract a court of equity will often undertake to grant relief, where, by undue influence, the donee has procured its execution; for in such cases there is no room for the maxim: 'In pari delicto, potior est conditio defendentis.' Coulson v. Allison, supra. This maxim, as has been well said, ceases to apply, where 'the acts of one of the parties have their origin in the acts or influence of the other, because the wrong then rests chiefly, if not solely, on the person by whom it was contrived; and his confederate will be regarded as a mere tool or instrument for accomplishing an end which was really not his own.'—3 Lead. Cases Eq. 153; Ford v. Harrington, 16 N.Y. 285; Long v. Long, 9 Md. 348."

The opinion in Shipman v. Furniss was written in 1881. In 1907, the following sections were inserted in the Code and are now Tit. 7, §§ 108 and 109:

"§ 108. Misrepresentations of a material fact, made wilfully to deceive, or recklessly without knowledge, and acted on by the opposite party, or if made by mistake and innocently, and acted on by the opposite party, constitute legal fraud.

"§ 109. Suppression of a material fact, which the party is under an obligation to communicate, constitutes fraud. The obligation to communicate may arise from the confidential relations of the parties, or from the particular circumstances of the case."

■ The undisputed evidence in the instant case is that the appellee relied on appellant's statement that she could lawfully marry him.

In Barnett v. Barnett, 262 Ala. 655, 80 So.2d 626, 629, we said:

" 'In the bill as last amended, the complainants apparently attempt to bring their case within the influence of the case of Shipman v. Furniss, 69 Ala. 555. This case seems to be the leading case in this jurisdiction laying down principles of law governing gifts between a man and woman who are living in illicit relationship. These principles have been followed in subsequent cases. Under such conditions the burden is on the donee to establish the fact that the gift was in good faith, supported by sufficient consideration, and that it was not a result merely of the undue influence or constructive fraud which grew out of the illicit relationship."

Thus, the burden was on the appellant in the instant case to show a sufficient consideration for the taking of the deeds in the joint names of appellee and appellant. And appellant was also confronted with the following principle of law stated in Dorsey v. Dorsey, 259 Ala. 220, 66 So.2d 135, 140:

"A woman can have but one lawful husband living, and so long as he is alive and the marriage bond remains in full force, all her subsequent marriages, whether meretricious or founded in mistake and at the time supposed to be lawful, are utterly null and void. Sloss-Sheffield Steel & Iron Co. v. Watford, 245 Ala. 425, 17 So.2d 166; Bell v. Tennessee Coal, Iron & R. Co., 240 Ala. 422, 199 So. 813."

The principal witness for appellant was appellant herself. The trial court found as a fact that appellant had sworn falsely as to material matters and rejected her testimony pertaining to those matters relating to her claim of pecuniary contributions to the acquisition of the property in question. We have held in a case in equity where the testimony was before the trial court without a jury that if a witness swore a wilful falsehood as to a material fact, it was open to the trial court to find and be-

lieve that the testimony of such witness as to other material facts was not worthy of credence. Spring Park Ass'n v. Rosedale Park Amusement Co., 216 Ala. 549, 114 So. 43. We will not disturb the finding unless it is plainly wrong since the trial court saw and heard the witnesses. There is sufficient evidence in the record to support this finding of the trial court.

It follows that the application for rehearing should be granted and the judgment of the trial court affirmed.

Application for rehearing granted, and judgment affirmed.

All the Justices concur.