218 So.2d 134

**Ethel S. DEESE et al.**

v.

**Joseph R. ODOM et al.**

I Div. 367.

Supreme Court of Alabama.

Jan. 23, 1969.

Kilborn, Darby & Kilborn, Mobile, for appellants.

Edw. P. Turner, Jr., Chatom, for appellees.

LIVINGSTON, Chief Justice.

This appeal is from a decree of the Circuit Court of Washington County, Alabama, in Equity, fixing a disputed boundary line.

The appellees, Odom and Turner, own separate parcels of land which join the East Boundary line of property owned by the appellants, Ethel S. and Glenn Deese. The appellants' land is described as follows:

"Northeast Quarter of Southwest Quarter and Southeast Quarter of Southwest Quarter in Section 17, Township 3 North, Range 3 West."

Appellee Odom owns approximately 60 acres adjoining on the East which land is described as follows:

"South Half of Northwest Quarter of Southeast Quarter and Southwest Quarter of Southeast Quarter, Section 17, Township 3 North, Range 3 West."

Appellee Turner owns approximately 20 acres adjoining that of appellee Odom on the North and also bordering on appellants' (Deeses') property on the East, and is described as follows:

"North Half of the Northwest Quarter of the Southeast Quarter of Section 17, Township 3 North, Range 3 West."

Appellee Odom filed a bill of complaint in the Circuit Court of Washington County, Alabama, in Equity, alleging a dispute as to the boundary line between the parties aforementioned, seeking the court's adjudication of the boundary line and damages for timber allegedly cut by the appellants. Appellee Turner also filed a bill of complaint alleging a dispute as to the boundary line between him and the Deeses, seeking the same relief as appellee Odom.

The appellants, Mr. and Mrs. Deese, filed their answer and cross bill to each suit, claiming as the boundary line "the old Kendall fence" and prayed that a surveyor be appointed by the court to locate said fence.

All the parties involved, through their respective solicitors, agreed that the two cases should be consolidated and the issues raised therein determined in one proceeding, with a separate decree to be entered in each case. This agreement was ratified by the trial court and an order consolidating the causes issued. The parties further agreed that a survey of the disputed property was necessary, and the court appointed a licensed surveyor, Mr. Ralph McVay, to survey and determine the location of the dividing line between the West Half of the Southeast Quarter and the East Half of the Southwest Quarter, Section 17, Township 3 North, Range 3 West, Washington County, Alabama, as well as the location of the old Kendall fence row.

The appellants subsequently amended their cross bill in each case so that if the old Kendall fence line be found not to be the dividing line between these coterminous properties, then, in that event, they claimed title by virtue of adverse possession.

The surveyor's report was filed with the court in April of 1965. Thereafter, excep-

tions were filed to the report on behalf of the appellants.

The consolidated cases came on for trial, and the court, after hearing the evidence, rendered separate decrees in each case establishing the boundary line as shown by the McVay survey. The survey having resolved the boundary line adversely to the claims of the Deeses, notice of appeal and security for costs were duly filed and the appeal perfected.

The appellants' brief contains nine assignments of error which are substantially argued and which we shall consider in the order in which they are argued.

■ The main question presented to us is whether or not the evidence supports the findings of the trial court. At the outset, therefore, we must point out that the trial court, sitting without a jury in this case, heard the evidence ore tenus, and it is axiomatic in such cases that a presumption of correctness must be indulged unless to do so would result in a gross miscarriage of justice. Consequently, unless the trial court's decision is shown to be palpably wrong and unjust and contrary to the great weight of the evidence, its decision should be affirmed. Lovelace v. McMillan, 265 Ala. 290, 90 So.2d 822; Butts v. Lancaster, 279 Ala. 589, 188 So.2d 548; Talbot v. Braswell, 266 Ala. 578, 98 So.2d 7.

Appellants' first assignments of error numbered 1, 2, 6 and 9 are argued in bulk and assert the insufficiency of the evidence to support the decree of the lower court in determining the true boundary line as that surveyed by the court-appointed surveyor, Mr. Ralph McVay. The position here seems to be that since Mr. McVay's survey was not in "exact" accordance with the original Government Field Survey Notes, that it should not be used to determine the "true" boundary line in dispute between these parties. The appellants, however, offer no alternative of any kind save, we assume, to disregard the official survey and accept the testimony of their witnesses as to the use and occupation of the land in

dispute over the testimony of the witnesses for the appellees. The trial court chose to accept the McVay survey as sufficiently adequate to establish the true boundary line, it having been shown that McVay, a licensed surveyor, used accepted practices and followed accepted procedure for locating the true line between the aforementioned coterminous properties.

The case of Billingsley v. Bates, 30 Ala. 376, cited by appellant to support the above assignments 1, 2, 6 and 9, supports, we think the opposite view, as the following excerpt indicates:

"* * * it is for the jury [trier of fact] to ascertain and settle at what precise point the disputed or lost corner was placed, and the disputed line marked, by the government surveyor in his original survey. And to enable the jury [trier of fact] to perform that duty intelligently, any evidence, whether parol or written, may be submitted to them, which has any natural and reasonable tendency to show where the corner was placed or that line marked in the original survey. Recourse may be had to the unobliterated marks and corners of that survey, to the field-notes and plat, and to subsequent surveys made under their guidance. Such subsequent surveys cannot alter or control that survey; for, so far as it can be traced or proved, it must govern. But still they may aid the jury [trier of fact] in ascertaining *the original position of its lost corner.* * * * The mere fact that the party relying on them [subsequent surveys] has not proved that they correspond *in all respects* with the original government survey, *does not authorize the court to instruct the jury* [trier of fact] *to disregard them entirely in seeking the location of the lost corner or line.* The party cannot, in any case, prove such correspondence without proving *every part* of that survey, without the aid of such subsequent surveys. * * *"

■ We think from the above excerpt, the court in the instant case was correct in

accepting the McVay survey as an accurate and reliable means of determining the true boundary line between the properties herein involved. Other cases setting out essentially the same criteria as the above-quoted case include Ryan v. Fulford, 273 Ala. 600, 143 So.2d 452; Edwards v. Smith, 240 Ala. 397, 199 So. 811.

Appellants' next three assignments of error 7, 11 and 15 are also argued in bulk and take the position that the lower court erred in not decreeing that the old Kendall fence line was the boundary line between the appellants' and appellees' property, whether the same was the true boundary line or not, the contention being that the appellants and their predecessors in title had acquired title to the old Kendall fence line by adverse possession over some forty or more years.

It is true that a host of witnesses for the appellants asserted a belief that, in their opinion, everyone in the area appeared to accept the old Kendall fence line as the boundary line of the Deeses, their predecessor, Mr. Smallwood, and so forth. However, the appellees also presented witnesses who testified that such was not the case and that for as long as they could remember, in their opinion, the boundary line between the properties had been in continuous dispute over a similar or perhaps longer period of years. The fact that several surveys had been made with regard to the boundary line in question also indicates that all was not settled and harmonious with regard to the location of the line.

■ In light of such conflict, the trial court, in its wisdom, determined that the dispute should be resolved in favor of the survey results, as shown by the court-appointed surveyor's report and testimony as to where the true boundary line was located. Having heard the witnesses testify orally before him, and having the opportunity to observe their demeanor, we must conclude that the trial court's action was, under the circumstances, proper and fair for all concerned. We cannot conclude

otherwise, absent a showing, as is the case here, that the decree is palpably wrong and contrary to the great weight of the evidence. Lovelace v. McMillan, Butts v. Lancaster, Talbot v. Braswell, supra. We find no merit in assignments of error 7, 11 and 15.

Appellants' assignments of error 10 and 13 are also argued in bulk and, in substance, assert that since appellee Turner fenced his property around 1952, and was in adverse possession, because of the fence, of some of the disputed land at least up to this fence, then, appellants argue, the possession of the Deeses and their predecessor in title, Mr. Smallwood, was also adverse; that the Deeses' possession to the Turner fence was adverse for more than ter years next preceding the filing of the bill, and that this had the effect of establishing the boundary line between the appellants' property and that of appellee, Turner, along this Turner fence. In other words, the court should have found the boundary line to be what amounts to approximately eleven feet East of the line finally decided upon by the court.

■ In answer to these assignments, we direct attention to the following quotation from the case of Ryan v. Fulford, 273 Ala. 600, 143 So.2d 452, in which Mr. Justice Simpson wrote:

"* * * It is well settled that the government survey of lands into sections does not establish the ground location of the *interior subdivision lines*, such as we have here, but provides a basis for locating such lines. Nolin v. Parmer, 21 Ala. 66; Edwards v. Smith, 240 Ala. 397, 199 So. 811; Sims v. Sims, 273 Ala. 103, 134 So.2d 757. The only question in this kind of proceeding is whether the trial court is reasonably satisfied from legal evidence as to the correctness of the line as found and fixed in the decree. Stansell v. Tharp et al., 245 Ala. 270, 16 So. 2d 857. It should find the true line, whether or not it is the one contended for by either party. Ford v. Beam, 241

Ala. 340, 2 So.2d 411; Edwards v. Smith, 240 Ala. 397, 199 So. 811."

We should also like to direct attention to Title 47, Sec. 5, Code of Alabama 1940, which provides for the court's appointing a competent surveyor to locate a disputed boundary line. Such procedure is usual and recommended. There has been no substantial showing in this case wherein or why the court-appointed surveyor's report should not be accepted as correct. Accordingly, we find no merit in assignments 10 and 13.

The trial court, as arbitrator of the boundary line dispute between these parties, resolved it in favor of the boundary line as found by the court-appointed surveyor, Mr. McVay. All the evidence was heard ore tenus before the trial judge, and his decision will not be disturbed unless it is palpably wrong and contrary to the great weight of the evidence. We are unwilling to disturb the findings and decree of the lower court.

There being no further assignments of error nor reason to set out additional facts, the case is due to be, and is, affirmed.

Affirmed.

SIMPSON, COLEMAN and BLOODWORTH, JJ., concur.