268 So.2d 773

Nancy L. PALMER et al.

v.

Hilda RUCKER et al.

3 Div. 503.

Supreme Court of Alabama.

Sept. 28, 1972.

Rehearing Denied Nov. 9, 1972.

Edwin C. Page, Jr., Evergreen, for appellants.

J. B. Nix, Jr., Evergreen, for appellees.

PER CURIAM.

Hilda Rucker and others brought a bill, in equity, against Heustis J. Palmer and others in the Circuit Court of Conecuh County to quiet title to 90 acres of land located in the vicinity of the airport at Evergreen, Alabama. The bill, brought under Title 7, §§ 1109–1114 of the Code, avers that complainants, appellees here, are "joint owners and tenants in common of the following described tract of land which is situated in Conecuh County, State of Alabama, to-wit: (the description follows) and are in the peaceful possession of said lands." (Par. Added) The other requisite jurisdictional averments are present in the bill. The respondent, Heustis J. Palmer, an essential witness for the respondents-appellants, died after the final decree was rendered and before submission of this appeal, and the cause was revived as to his widow and executrix, Nancy L. Palmer, and as to his brothers and sisters, his heirs at law. Mr. Palmer made no disposition in his will of the lands here involved. From a decree adverse to them, respondents appeal.

Respondents, heirs of D. D. Palmer, Sr., also known as David D. Palmer, Sr., filed answers and cross bill denying that complainants had title to the land or that they

had peaceable possession thereof. They claimed to own the property by descent cast from D. D. Palmer, Sr. who allegedly owned it as a part of a 245-acre tract, the land in controversy being the easternmost 90 acres of said tract. Respondents further alleged that the entire 245 acres had been divided in kind among D. D. Palmer's nine children on February 15, 1947, and that on the following September 22, 1947, they sold the timber on all the land in a court proceeding and divided the money among themselves. In the attempted division of the D. D. Palmer lands, the 90 acres claimed by complainants-appellees appear to have been allocated in three more or less equal parcels to Heustis J. Palmer, Stanley L. Palmer, and D. D. Palmer, Jr. Deeds for these parcels, as well as for the other six, were recorded in the Probate Office of Conecuh County on February 27, 1947.

Heustis J. Palmer, Rosa Palmer Cook Warren, Gloria Palmer, Mary Palmer, and Helen Palmer filed further answer and cross bill seeking a decree quieting title to the parcels conveyed to them, or their ancestor, in the 1947 division of land among the respondents. They averred further that they held title to the 90 acres claimed by the complainants by adverse possession and by prescription, and, as a further defense, charged the complainants with laches.

D. D. Palmer, III and James D. Palmer, joined by their mother, Jessie Palmer Rice, answered the bill by asserting their claim to the parcel deeded to their deceased father and husband in the 1947 division. Their cross bill prayed that said land be vested in them; or, in the alternative, if the court should award the 90 acres to complainants, that all of the nine division deeds made on February 15, 1947, be declared "null and void for want of consideration" and the remaining land of the 245-acre tract be divided in kind among the heirs of D. D. Palmer, Sr., or, that not being possible, that the lands be sold for division.

Testimony was taken orally before the court under Equity Rule 56 and the trial court found: (1) That the respondent, Heustis J. Palmer, willfully testified falsely at the trial; (2) that respondents-cross complainants (appellants) had failed to establish title by adverse possession and were not entitled to relief; (3) that complainants (appellees) were entitled to relief under their bill; and (4) that D. D. Palmer, III, James D. Palmer, and Jessie Palmer Rice were entitled to the alternative relief prayed for in their cross bill (cancellation of the nine deeds of division). Thereupon, the trial court decreed on March 26, 1971, that title to the 90 acres described in complainants' bill be vested in them; it set aside all nine deeds made among the heirs of D. D. Palmer, Sr. on February 15, 1947; declared the remainder of the 245 acres to be vested in the respondents as tenants in common and gave them 60 days to effect a partition of said lands, and ordered said lands sold if not partitioned in the specified time.

Respondents-appellants applied for rehearing and charged as error each of the findings and orders of the court and called attention to the fact that the court had failed to rule on respondents' plea of laches. On May 12, 1971, the trial court set aside its decree and entered another which was, in substance, a reaffirmation of its former decree except that it found complainants not guilty of laches and deleted that portion of the former decree dealing with partititon or subsequent sale for division of the remaining acreage.

The background of the controversy appears to be that on January 1, 1906, William Palmer conveyed 245 acres of land to Alfred Crum, Peter Palmer, and David D. Palmer. On November 1, 1915, Alfred Crum and others conveyed 137 acres of this land to David D. Palmer, and on the same day, David D. Palmer and the same other grantors, conveyed 90 acres to Alfred Crum in an apparent division of lands held as tenants in common.

On February 2, 1939, Alfred Crum conveyed by warranty deed his 90 acres to complainants-appellees who recorded their deed, assessed the land for taxes, and paid the taxes annually since that time. Complainants-appellees have lived away from Conecuh County and the State of Alabama for many years. William Raiford, complainants' father, leased a portion of the tillable land on the 90 acres to Cleveland Millender for the crop years 1944 and 1945, but Mr. Millender ceased to rent the land when Heustis J. Palmer asked him to pay rent to him. Evidence of further acts of actual possession on the part of complainants is sparse indeed, consisting chiefly of testimony about infrequent visits to the land, efforts to list it for sale with real estate agents in Montgomery and Evergreen, and efforts to employ counsel to clear up the dispute over title. Appellants concede, however, that the appellees have the superior record title to the land. Therefore, appellees' claim to possession must be based on that constructive or presumed possession which is an adjunct of ownership of the legal title.

Appellants, on the other hand, in addition to deeds of record constituting at least color of title and the payment of taxes since 1947, show a more or less complete record of possessory acts through the tenants of Heustis J. Palmer for a considerable period in excess of 20 years. There is testimony that at least a portion of the tillable land, about 30 acres of the 90, was rented out each year by Heustis J. Palmer since 1947; that Heustis J. Palmer made periodic visits to the land; and that Stanley Palmer, another of D. D. Palmer's children, while living on the adjacent "Palmer lands," cut wood and timber off the 90 acres. There is also testimony that the entire 245 acres were generally reputed in the community to be "Palmer land" and witnesses have not known of anyone else claiming it.

When called as a witness, Heustis J. Palmer testified that he had not ever heard of Alfred Crum (his great uncle), had never known of Alfred Crum being around the lands in question, and knew nothing about a claim of ownership by Alfred Crum to any part of the lands. However, appellants' witness, Reverend Matthew Kelley, a neighbor who had lived in the vicinity for 53 years, testified that he had known Alfred Crum and that he was reputed to be the uncle of David D. Palmer, the father of Heustis J. Palmer. George Banks, another of appellants' witnesses, testified that he had lived in the general vicinity since 1932 and that he, too, had known Alfred Crum and that Alfred Crum was reputed to be related to the Palmers. Finally, Jessie Palmer Rice, a respondent-cross complainant and the widow of Heustis J. Palmer's brother, testified that she had known Alfred Crum and that he was referred to in the family as "Uncle Alfred."

Heustis J. Palmer also testified that he did not know Hilda Rucker, one of the appellees; but Hilda Rucker testified that at one time Heustis J. Palmer lived in her home in Cleveland, Ohio, as her guest for several months, that within one year after the death of Stanley Palmer she went to Montgomery to talk to Heustis about the land dispute and he referred her to his sister, Rosa, and that he did not tell her that he was making claim to any part of her lands, merely stating to her that he did not know she owned any lands. Other witnesses fix the date of Stanley's death at around 1964 or 1965.

In rebuttal to Heustis J. Palmer's testimony regarding his lack of knowledge of the claim of Alfred Crum and his successors in title to the 90 acres, the appellees introduced in evidence a tax assessment sheet for the year 1940 from the records in the office of the Tax Assessor for Conecuh County. This sheet lists the names and address of the owner of the address of the owners of the assessed property as: "Heirs of Alfred L. Crum, Stanley Palmer, Agt., P. O. Address E'green Rt. E." The abbreviated description of the property assessed for taxes on that sheet is: "W 68a

of W ½ of SE ¼ & E 22a of E ½ of SW ¼, S. 2, T. 5, R. 10, No.Acres 90." The affidavit in the lower right-hand corner, dated November 24, 1939, executed before James J. Lee, Tax Assessor, is signed: "Stanley Palmer" and immediately underneath: "Rev. H. J. Palmer." When this assessment sheet was exhibited to the witness, H. J. Palmer, the following ensued:

"Q I would like for you to look at complainant's exhibit No. 4. Examine that assessment sheet and pay particular attention to the signatures that appear on it.

"A What is the meaning of this?

"THE COURT: Just answer the question.

"Q I just want you to look at this. Have you examined the sheet, complainant's exhibit 4?

"A Yes, sir.

" . . .

"Q Did you sign that sheet?

"A Now—that is my writing. Yes, sir, that's my writing there. The only thing that I have ever signed was signed for Stanley Palmer's children. The only time I've ever put my signature in a book is that I was taking care of Stanley Palmer's children."

Some time later, in further cross examination of the witness, the following occurred:

"Q And you have already testified that that is your signature at the bottom?

"A Yes, sir, this here seems to be my writing but I did not put it there.

"Q You mean—

"A No, sir—no, sir—the only time that I have ever put my signature on a book is trying to—I was doing it strictly for Stanley Palmer's property.

"THE COURT: Did I understand you to say that is your signature but you didn't write it? Is that what you are saying?

"A I didn't write this here—not this here—not on that. The only time I've ever signed was record the deeds whenever Lawyer Jones got through with them—record them in the book in the courthouse and the only time I've ever put my signature on that book is when I—you see, I'm paying the tax for Stanley Palmer's children which I had at that time. I don't know anything about the other stuff up there.

"Q I understand that you are denying that you signed that sheet?

"A If you are talking about the contents of that, *yes, sir,* (emphasis) . . . ..

"THE COURT: I want you to sign your name right there—Reverend H. J. Palmer. (Witness signs his name on piece of paper handed to him by the Court.)"

The paper bearing the signature of the witness was introduced into evidence as the "Court's Exhibit #1."

After considering the foregoing testimony and evidence, the trial court concluded that the witness willfully testified falsely (as to a material fact) and disregarded his testimony in its entirety.

The initial question in the determination of this appeal is whether the trial court abused its discretion in applying the doctrine "false in one thing, false in everything" to the testimony of the witness, Heustis J. Palmer.

" . . . . this court has repeatedly urged caution in the application of the maxim 'falsus in uno, falsus in omnibus'. Tindell v. Guy, 243 Ala. 534, 10 So.2d 862. . . . ." Beavers v. Boykin, 273 Ala. 413, 415, 142 So.2d 1011 (1962).

■ The rule is generally stated that if the trier of fact is reasonably satisfied that a witness has willfully and corruptly sworn falsely as to matter material to the issues in the case, it may, in its discretion, reject all of the testimony of that witness. Jones v. Americar, Inc., 283 Ala. 638, 219 So.2d 893 (1969); Sanders v. Scarvey, 284 Ala. 215, 224 So.2d 247 (1969); Bahakel v. Great Southern Trucking Co., 249 Ala. 363, 31 So.2d 75 (1947).

" . . . . We have held in a case in equity where the testimony was before the trial court without a jury that if a witness swore a wilful falsehood as to a material fact, it was open to the trial court to find and believe that the testimony of such witness as to other material facts was not worthy of credence. Spring Park Ass'n v. Rosedale Park Amusement Co., 216 Ala. 549, 114 So. 43. . . . . . ."

Hackmeyer v. Hackmeyer, 268 Ala. 329, 334, 106 So.2d 245 (1958).

■ There can be little doubt that the matters testified about in a contradictory manner were relevant to the issues in the case. The trial court had opportunity to see the witness and to observe his demeanor on the witness stand and was in a better position than we are to pass upon the question of whether his testimony was willfully and corruptly false. We will not disturb his finding unless it is plainly wrong. There is sufficient evidence in the record to support the finding of the trial court. Hackmeyer v. Hackmeyer, supra.

Appellants make nine assignments of error, several of which question the trial court's findings of fact based upon the testimony considered by it and, in particular, they say the trial court erred in holding that appellants had failed to establish title to the land in question by adverse possession or by prescription. We cannot agree.

When one is claiming title to land by adverse possession, this court has said he has " . . . . the burden of showing actual, clear, definite, positive, notorious, open, continuous, adverse and exclusive possession of a definite tract under a claim of right for the time prescribed by law, and such possession is required to be shown by clear and convincing evidence. Turnipseed v. Moseley, 248 Ala. 340, 27 So.2d 483, 170 A.L.R. 882; Walthall v. Yohn, 252 Ala. 262, 40 So.2d 705." Prestwood v. Hunt, 285 Ala. 525, 530, 234 So.2d 545, 549 (1970).

■ Appellants offered testimony tending to show possession of the disputed lands through their tenants, during the crop growing seasons, for more than 20 years. However, when the trial court elected to disregard entirely the testimony of Heustis J. Palmer, there remained little or no evidence tending to establish a continuous, adverse, and exclusive possession in the appellants.

Moreover, the

" . . . . findings and conclusions of fact made by a trial judge, based on testimony taken ore tenus before him in open court are presumed to be correct and that such findings and conclusions carry with them the force of a jury verdict. Stephens v. Stephens, 280 Ala. 312, 193 So.2d 755; Casey v. Krump, 263 Ala. 346, 82 So.2d 424; Kite v. Head, 278 Ala. 340, 178 So.2d 166. Unless such findings and conclusions are palpably wrong or without some supporting evidence, or are manifestly unjust, . . . . the final decree of the trial court is due to be affirmed. Dunn v. Fletcher, 266 Ala. 273, 96 So.2d 257; Christian v. Reed, 265 Ala. 533, 92 So.2d 881; Holoway v. Carter, 261 Ala. 51, 72 So.2d 728; Deese v. Odom, 283 Ala. 420, 218 So.2d 134." Renfroe v. Weaver, 285 Ala. 1, 5, 228 So.2d 764, 767 (1969).

We hold that the decision of the trial court in this regard is correct, the appellants having failed to meet the burden of proof as set out above.

Appellants' assignments of error 8 and 9 raise the question of the sufficiency of the

evidence to support the finding of the trial court that complainants-appellees are entitled to a decree quieting title in them.

■ As heretofore stated, appellees have the superior record title and, by reason of that fact, they have a constructive possession which entitles them to bring an action to quiet title unless there is actual possession in someone else. Patronas v. West Dauphin Corp., 280 Ala. 442, 194 So.2d 845 (1967); Barry v. Thomas, 273 Ala. 527, 142 So.2d 918 (1962); Chestang v. Tensaw Land & Timber Co., 273 Ala. 8, 134 So.2d 159 (1961).

We have carefully read the testimony in this case and are unable to find any evidence of actual possession by the complainants-appellees after their lease to Cleveland Millender expired in 1945.

Although the trial court's decision to disregard the testimony of Heustis J. Palmer must be upheld, we conclude that the trial court did not consider the question of what acts of possession could be shown by appellants based on the testimony of other witnesses. We must now consider that question, giving due regard to the trial court's finding.

There is undisputed testimony sufficient to show actual possession by the appellants at the time that suit was instituted.

■ While the averment of the bill that complainants (appellees) were the owners of and were in the "peaceful" possession of the land gave the trial court jurisdiction of the cause so as to authorize relief to the respondents (appellants) upon proof, by them, of superior title as was discussed in some detail in Chestang v. Tensaw Land & Timber Co., supra, no case has been cited to us, nor have we found one, where this court has approved the quieting of title in a complainant under the theory of constructive possession when it is shown that the actual possession is in another. On the other hand, this court has held:

". . . . though one having a legal estate in fee in land has the constructive possession required to maintain such a suit (action under Code 1940, Title 7, § 1109), this is not the case when actual possession is in another, not in relation of privity with him. Wood Lumber Co. v. Williams, 157 Ala. 73, 47 So. 202; Brunson v. Bailey, 245 Ala. 102, 16 So.2d 9." (Par. Added) Ex parte Proctor, 247 Ala. 138, 143, 22 So.2d 896, 900 (1945).

Moreover, in the case of Bukacek v. Pell City Farms, Inc., 286 Ala. 141, 145, 237 So.2d 851, 854 (1970), we said:

". . . . This court has repeatedly held that in order to maintain the statutory proceeding to quiet title the proof must show a peaceable possession in the complainant as distinguished from a contested, disputed or scrambling one. 16 Ala.Dig., Quieting Title, ⊛12(9)."

Viewed in the light of the foregoing, we conclude that there was insufficient evidence before the court to sustain its finding that complainants-appellees were entitled to the relief prayed for in their complaint or to sustain its decree vesting title to the disputed lands in them. Having thus found, there is no necessity to declare null and void the division between the heirs of D. D. Palmer, Sr. of February 15, 1947, or to declare the rights of the heirs of D. D. Palmer, Sr. in the remaining lands.

That part of the trial court's decree disregarding the testimony of Heustis J. Palmer, and that part thereof finding that the respondents-appellants are not entitled to relief under their cross bill, is affirmed. However, our consideration of the remaining testimony requires us to eliminate that portion of the trial court's decree finding that complainants-appellees are entitled to relief as well as that portion which vests title to the disputed lands in them. As a consequence, that portion of the said decree which declares null and void the division of February 15, 1947, between the heirs of D. D. Palmer, Sr., and the nine

recorded deeds evidencing the same, should be eliminated from said decree as should that portion which declares the remaining lands, after deducting the 90 acres in dispute, is vested jointly in the heirs of D. D. Palmer, Sr. The decree should be corrected without prejudice.

The cause is remanded to the lower court with directions to enter a decree in accordance with this opinion.

The foregoing opinion was prepared by John B. Tally, a judge of the Ninth Judicial Circuit on special assignment to the Supreme Court by order of the Chief Justice, and was adopted by this court as its opinion.

Affirmed in part; reversed in part; and remanded to the trial court with directions to enter a decree in accordance with this opinion.

HEFLIN, C. J., and MERRILL, HARWOOD, MADDOX and SOMERVILLE, JJ., concur.

## On Rehearing.

PER CURIAM.

Appellants have asked us to clarify our opinion. We agree that it is probably not as plain as it could be made.

This was a bill to quiet title. The trial court quieted and vested title in complainants-appellees.

We held that the trial court erred because the complainants, appellees, did not show that they were in possession, either actual or constructive. Note our one-sentence paragraph in the opinion which reads: "There is undisputed testimony sufficient to show actual possession by the appellants at the time that suit was instituted."

This court treated that situation thoroughly in Dennison v. Claiborne, Ala., 265 So.2d 853,[1] and it need not be here repeated.

Under *Dennison* and the cases cited in the original opinion, the complainants were not entitled to relief, and that calls for a reversal of Item 1 of the adjudication part of the amended decree which vested title in complainants.

The trial court stated that the respondents' claim to the property (of which they were in possession) based on adverse possession and prescription was dependent upon the testimony of a witness who had "willfully testified falsely under oath and his entire testimony is therefore disregarded by the Court," and therefore respondents' claim was not sustained by the proof. That means that the respondents were not entitled to relief under their cross bill.

■ Appellants request us to explain our statement that "The decree should be corrected without prejudice." What we meant to hold, and do hold, is that neither appellees nor appellants are precluded from filing an appropriate action in the future to determine who has better claim to the 90 acres. It is obvious that as long as appellants are in the actual possession of this tract, the appellees can never win in a statutory bill to quiet title. But our decision here would not preclude, for example, a suit in ejectment.

■ The words "without prejudice" in their general adaptation, when used in a decree, mean that there is no decision of the controversy on its merits, and leaves the whole subject in litigation as much open to another suit as if no suit had ever been brought. Vacalis v. Lowery, 279 Ala. 264, 184 So.2d 345, and cases there cited. When the words "without prejudice" appear in an order or decree, it shows that the judicial act done is not intended to be res judicata of the merits of the controversy. Commonwealth ex rel. Eldredge v. Eldredge, 175 Pa.Super. 276, 104 A.2d 185.

Item 3 of the adjudication decree, dealing with the remainder of the lands, excluding the 90 acres, is affirmed.

1. Ante p. 69.

· The decree of the trial court will be corrected as noted in the opinion and this extension.

Opinion extended and application for rehearing overruled.

HEFLIN, C. J., and MERRILL, HARWOOD, MADDOX and SOMERVILLE, JJ., concur.